103 A.3d 1255

Susan OCTAVE on behalf of James OCTAVE, an Incapacitated Person, and Susan Octave, Appellants

v.

David Wade WALKER, and Commonwealth of Pennsylvania, Department of Transportation, Appellees.

Susan Octave on behalf of James Octave, an Incapacitated Person, and Susan Octave, Appellants

v.

David Wade Walker, and Commonwealth of Pennsylvania, Department of Transportation, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 15, 2013.

Decided Oct. 30, 2014.

David Albert Colecchia, Esq., Law Care, Greensburg, for Susan Octave and James Octave.

Jeanette Hsin Ho, Esq., Pietragallo, Gordon, Alfano, Bosick & Raspanti, L.L.P., Pittsburgh, for David Wade Walker.

Kemal A. Mericli, Esq., PA Office of Attorney General, for Department of Transportation.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice EAKIN.

In this appeal, we are asked to consider whether appellants waived the mental health records privilege provided under the Mental Health Procedures Act (MHPA), 50 P.S. § 7111,[1] by filing a negligence suit to recover for physical injuries sustained by James Octave upon being struck by a tractor-trailer driven by appellee David Walker.[2] The incident occurred June 21, 2007; based on eyewitness reports, the state police concluded James attempted to commit suicide by jumping under the truck's trailer. On April 27, 2009, appellant Susan Octave, James's wife, filed a complaint in her own right and on behalf of James, an incapacitated person, against the Pennsylvania Department of Transportation (DOT), Walker, and a number of other parties based upon their purported negligence.[3] The complaint alleged James suffered a number of mental and physical injuries as a result of the incident and sought damages.

Because the state police concluded James was attempting to commit suicide, appellees sought discovery information re-

1. Section 7111 provides, in pertinent part:

   (a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except [in situations inapplicable here.]

   \* \* \*

   In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. *Id.*, § 7111(a).

2. Although James survived the incident, he later died as a result of his injuries. Neither party asserts his death affects the privilege.

3. By order dated September 24, 2009, the trial court granted the preliminary objections of these additional defendants, and they were dismissed from the case.

garding his mental health history and access to his mental health records, which Susan refused to provide. Appellees filed a motion for leave to access and copy sealed files pertaining to James's involuntary commitments pursuant to the MHPA and a motion to compel the execution of authorizations pertaining to his mental health and involuntary commitment records and full and complete answers to Interrogatory No. 63.[4] Thereafter, appellants filed an amended complaint, alleging James only suffered physical injuries as a result of the incident. The trial court issued an order disposing of appellees' motions, reasoning that because the amended complaint removed allegations pertaining to mental injuries, it did not place James's mental condition at issue. Walker filed a motion for reconsideration, which was denied; the trial court certified the order for immediate appeal pursuant to 42 Pa. C.S. § 702(b).

Appellees appealed to the Commonwealth Court, contending the trial court erred when it denied them access to James's

4. Interrogatory No. 63 provided:

63. Did Plaintiff at any time throughout his entire lifetime suffer from mental illness, or seek treatment regarding his mental health? If so, please answer the following:

a. Any and all official diagnosis' [sic] given to Plaintiff by a medical physician/institution regarding his mental health;

b. The length of time that Plaintiff suffered from mental/psychological issues;

c. List all facilities that Plaintiff treated [sic] throughout his lifetime for his mental/psychological issues;

d. List all physician[s] with whom Plaintiff treated [sic] throughout his lifetime for his mental/psychological issues;

e. Was Plaintiff treating [sic] for his mental health issues at the time of the incident giving rise to this litigation;

f. Has Plaintiff ever attempted suicide at any time throughout his life and if so, when;

g. Has Plaintiff ever spoken about committing suicide or terminating his life to anyone, throughout his lifetime;

h. Has Plaintiff ever been involuntarily committed to a mental health facility and if so, please provide the dates and names of the facilities;

i. Has Plaintiff ever voluntarily checked into a mental health facility and if so, please provide the dates;

j. Has Plaintiff ever lost a job, or had to resign from a job as a result of his mental illness and;

k. How did Plaintiff's mental illness affect his day to day activities. Interrogatories Directed to James Octave, at 24–25.

mental health records and involuntary commitment records. Specifically, appellees argued the MHPA's confidentiality provisions were waived by Susan because she placed James's mental health at issue by filing the complaint. In defense to the underlying negligence claim, appellees asserted James intentionally caused his own injuries by throwing himself under Walker's vehicle in an unsuccessful suicide attempt. Denying them access to the requested information, appellees argued, "would be manifestly unfair, grossly prejudicial and an affront to the truth-seeking function of the courts as Susan Octave should not be permitted to bring suit against [appellees] while depriving them of information which could totally absolve them of liability." *Octave ex rel. Octave v. Walker*, 37 A.3d 604, 607 (Pa.Cmwlth.2011).

The Commonwealth Court reversed and remanded, finding "Susan Octave directly put James Octave's mental history, especially as it pertains to his previous suicide attempts, or considerations or contemplations of suicide, [at issue] by filing a complaint alleging negligence by Walker and DOT in connection with the accident[,]" and thereby waived the MHPA's confidentiality protections. *Id.,* at 610. The court further reasoned the information sought "relates directly to the issue of DOT's and Walker's liability, the defenses raised by Walker and DOT, and is information which impacts upon causation[, which] . . . is certainly critical in a trial of a negligence action, if not more so than damages." *Id.; see Gormley v. Edgar*, 995 A.2d 1197, 1206 (Pa.Super.2010) (holding plaintiff waived Judicial Code's confidentiality protections for mental health records by seeking damages for anxiety); *Kraus v. Taylor*, 710 A.2d 1142, 1145 (Pa.Super.1998) (holding plaintiff waived MHPA's and Judicial Code's confidentiality protections for his drug and alcohol medical records by filing personal injury lawsuit seeking damages for permanent injury thereby placing his life expectancy at issue), *appeal dismissed as improvidently granted*, 560 Pa. 220, 743 A.2d 451 (2000) (*per curiam* ). Accordingly, the court concluded it would be "unfair and grossly prejudicial" to bar Walker and DOT access to James's history of suicidal attempts or contemplations, and held:

Susan Octave must provide a full and complete answer to Interrogatory No. 63 and provide all medical records requested by DOT and Walker ... to the trial court for an *in camera* review, so that the trial court may identify those records which pertain or relate, in any manner, to James Octave's history of suicidal attempts and/or contemplations, or desires or attempts to harm himself.

*Octave*, at 610.

Senior Judge Kelley dissented, concluding since the amended complaint sought damages only for physical, not mental, injury, "it cannot be said that [Susan] directly placed her husband's mental condition at issue as the plaintiffs had in *Kraus* and *Gormley.*" *Id.*, at 613 (Kelley, S.J., dissenting) (citing *Premack v. J.C.J. Ogar, Inc.*, 148 F.R.D. 140, 145 (E.D.Pa.1993) ("In a civil matter, however, there are numerous ways—other than an absolute bar—to ensure that both an individual's privacy and the truth-seeking function of the courts are sufficiently protected. First of all, an individual is always free to leave his or her mental condition out of a complaint—thus assuring continued confidentiality[.]")). Further, Senior Judge Kelley noted, given the unambiguous MHPA provisions, he "d[id] not believe that an implicit waiver of its confidentiality provisions can be found based upon the mere filing of the instant amended complaint[,]" especially since less intrusive means exist for Walker and DOT to contest causation—"*i.e.*, through the testimony of Walker and other eyewitnesses to the incident, and through the evidence that can be gleaned from the contents of the PSP files and the divorce and PFA records that are subject to discovery under the trial court's order." *Id.* (citations omitted).

We granted allocatur to address the following issue:

Given the [petitioners] do not explicitly waive the protections of 50 P.S. § 7111, given the [petitioners'] Amended Complaint does not allege injuries to mental health, given the [respondents] raise the question of mental health and seek the [petitioner's] pre-collision mental health records, and given the [respondents'] claim of mental health relies exclusively on the conclusions of a third party, did the

[petitioners] put mental health at issue and impliedly waive the protections of 50 P.S. § 7111 though [sic] the act of filing the within lawsuit?

*Octave ex rel. Octave v. Walker*, 619 Pa. 176, 58 A.3d 753, 754 (2012) (*per curiam*) (alterations in original). Section 7111 does not explicitly state whether the protections it affords to mental health records can be waived; therefore, this case involves the proper construction of a statute, for which our standard of review is *de novo* and scope of review is plenary. *Delaware County v. First Union Corporation*, 605 Pa. 547, 992 A.2d 112, 118 (2010) (citation omitted).

The primary goal of statutory interpretation is ascertaining and effectuating the General Assembly's intent. 1 Pa.C.S. § 1921(a). When attempting to determine such intent, this Court must presume the General Assembly did not intend an absurd or unreasonable result. *Id.*, § 1922(1). The practical results of a particular interpretation may also be considered. *Id.*, § 1921(c)(4), (6).

Appellants contend, since the amended complaint does not seek damages for mental injury, they have not put James's mental health at issue and, thus, have not impliedly waived the MHPA's confidentiality protections. By holding such records are discoverable, appellants argue, the Commonwealth Court failed to follow this Court's clear mandate in *Zane v. Friends Hospital*, 575 Pa. 236, 836 A.2d 25 (2003), by, in effect, "hold[ing] privilege for mental health records may be waived if a lawsuit is filed and the mental health records are relevant to that lawsuit." Appellants' Brief, at 13. According to appellants, the Commonwealth Court's decision "impliedly contemplate[s] a 'balancing test' of various factors to determine if the privilege has been waived, or alternatively[,] if the records should be provided regardless of the privilege, based on need." *Id.* Such balancing test, appellants assert, has no basis in the clear language of the MHPA and violates this Court's holding in *Zane*.

While appellees do not dispute that James's mental health is not at issue in the damages realm, they highlight such is

certainly at issue regarding causation, which is at the heart of appellants' negligence claim. "Whether a plaintiff's mental state bears upon the issue of damages, as in *Gormley* and *Kraus*, or on the issue of causation instead, as in this case, [DOT asserts,] surely has no bearing on the basic sense of fairness and justice which underlies those decisions." Brief for Appellee, Department of Transportation, at 19 (internal quotation marks omitted). Indeed, DOT claims, "If anything, a case such as this one ... presents a *stronger* argument for disclosure than did *Gormley* or *Kraus* ..., [in which] the evidence at issue served merely to limit the damages to which the plaintiff might be entitled, whereas in this case it could serve to defeat the [appellee]s' liability altogether." *Id.*, at 20 (emphasis in original). Appellees argue appellants should not be permitted to "wield the confidentiality provisions of the [MHPA] as a sword in order to exploit them for the sake of gaining advantage in the ensuing litigation[, which] is both unfair and outside of the statute's protective, nondiscriminatory purpose." *Id.*, at 11–12; *see also* Brief for Appellee, David Walker, at 20. As to appellants' reliance on *Zane*, appellees note that case is factually distinguishable and did not address the question at issue in this case.

Further, appellees assert, in filing this negligence action, appellants knew or reasonably should have known James's mental health would be put directly at issue given the state police's conclusion James attempted to commit suicide; thus, the filing of the complaint was "the functional equivalent of the 'written consent' that is required by the MHPA in order to waive its confidentiality protections[.]" Brief for Appellee, Department of Transportation, at 13 (quoting 50 P.S. § 7111(a)); *see also* Brief for Appellee, David Walker, at 17. DOT highlights § 7111 "does not require an 'express' waiver of confidentiality but only a 'written' one, for which the filing of [this] suit plainly suffices." Brief for Appellee, Department of Transportation, at 11.

Initially, we note appellants' reliance on *Zane* is misplaced. In *Zane*, this Court held § 7111 barred the plaintiff access to the defendant-patient's mental health records in a negligence

suit, despite such records being necessary to establish the plaintiff's case.[5] This case is readily distinguishable from *Zane;* here Susan is suing on behalf of the patient, James. This is not a situation wherein the patient is a defendant with no control over the filing of the suit and, therefore, no control over the potential for disclosure of his mental health records. Moreover, given the party composition in *Zane,* the issue of whether, and under what circumstances, a party's litigation conduct may serve to waive § 7111's confidentiality protections was not addressed. Accordingly, our holding in *Zane* has no bearing on the case at hand.

The MHPA, 50 P.S. § 7101 *et seq.,* establishes the rights and procedures for inpatient psychiatric treatment and involuntary outpatient care with the purpose of assuring availability of adequate treatment to mentally ill persons. The confidentiality protections for mental health records afforded by § 7111 exist to enable effective treatment "by encouraging patients to offer information about themselves freely and without suffering from fear of disclosure of one's most intimate expressions to others and the mistrust that the possibility of disclosure would engender." *Zane,* at 33 (citations omitted). To this end, § 7111(a) requires a patient's "written consent" before his mental health records are released or disclosed, except under certain limited circumstances inapplicable here. 50 P.S. § 7111(a). The Superior Court has held this statutory protection can be "waived," however, if the patient places his mental health at issue in a case. *See Kraus,* at 1145.

In *Kraus,* the Superior Court held the plaintiff impliedly waived the MHPA's and Judicial Code's confidentiality protections for his drug and alcohol treatment records by filing a personal injury lawsuit seeking damages for permanent injury, thereby placing his life expectancy at issue in the case. The court reasoned, "[a]llowing [the plaintiff] to pursue a claim for permanent injury, while simultaneously barring [the defendants] from access to [the plaintiff]'s long history of drug and

5. This Court affirmed the grant of summary judgment based on the absence of these records.

alcohol abuse, 'would be manifestly unfair and grossly prejudicial.' " *Id.* (quoting *O'Boyle v. Jensen,* 150 F.R.D. 519, 522 (M.D.Pa.1993)). Further, the court stated:

We cannot believe that the Pennsylvania General Assembly intended to allow a plaintiff to file a lawsuit and then deny a defendant relevant evidence, at plaintiff's ready disposal, which mitigates defendant's liability. *See generally* 1 Pa. C.S. § 1922(1) (in ascertaining legislative intent, courts are to presume that the General Assembly did not intend an unreasonable result). Rather[,] the General Assembly must have intended the privileges to yield before the state's compelling interest in seeing that truth is ascertained in legal proceedings and fairness in the adversary process.

*Id.* (citation and internal quotation marks omitted). Accordingly, the court concluded the plaintiff's treatment records were not privileged and it was within the trial court's discretion to admit the evidence. Similarly, in *Gormley,* the Superior Court held the plaintiff waived the confidentiality provisions of § 5944 of the Judicial Code, 42 Pa.C.S. § 5944, by seeking damages for anxiety. *Gormley,* at 1204–06.

The question of whether and under what circumstances the MHPA's and Judicial Code's confidentiality protections may be waived has also been addressed by our federal courts applying state law. In *O'Boyle,* the decedent was found unconscious in his cell after being arrested for public drunkenness; he died several hours later. The plaintiff alleged the decedent's death resulted from injuries inflicted by the police and by their failure to provide the decedent with proper medical attention. The defendants sought access to the decedent's drug and alcohol treatment records; such records are confidential and can only be disclosed with the patient's consent and only to enumerated individuals.[6] Although no con-

6. All patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center shall remain confidential and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the

sent had been provided and the defendants did not fall within the scope of individuals to whom the records could be provided even if consent had been given, the court held the documents were subject to discovery because the privilege had been waived. *O'Boyle*, at 521–22. The court noted, "[S]tatutorily-created privileges are not absolute. The privilege conferred must be balanced against countervailing interests in [e]nsuring the fairness and integrity of the judicial system. The state's 'compelling interest' in ensuring that the truth is revealed in the course of the adversarial process justifies an implied waiver of privilege." *Id.*, at 522 (citations omitted). By filing the lawsuit, the court reasoned, the plaintiff had placed the decedent's medical condition at issue, thereby waiving the confidentiality protection provided by § 1690.108(c). *Id.* The court further explained:

O'Boyle died for unexplained reasons. The possibility cannot be ruled out at this stage that he died as a result of a medical condition related to or brought on by a history of alcohol problems. Barring defendants from exploring that possibility in preparing their defense to plaintiff's allegations would be manifestly unfair and grossly prejudicial. Plaintiff cannot pursue a claim against defendants for O'Boyle's death while denying them all access to medical/treatment records potentially relevant to the key issue of causation.

*Id.* (citations omitted).

Courts in other jurisdictions have applied a similar analysis in determining privileges are waived when one places confidential information at issue in a lawsuit. *See, e.g., D.C. v. S.A.*, 178 Ill.2d 551, 227 Ill.Dec. 550, 687 N.E.2d 1032, 1041 (1997) (holding confidentiality protection for mental health records waived in negligence suit, reasoning "the information

purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient.

71 P.S. § 1690.108(c).

plaintiff seeks to protect potentially contradicts his assertion that defendants were negligent and caused the accident[; thus, t]he information has the potential to completely absolve defendants from any liability"); *Prink v. Rockefeller Center, Inc.*, 48 N.Y.2d 309, 422 N.Y.S.2d 911, 398 N.E.2d 517, 521–22 (1979) (holding confidentiality protection for psychiatric records waived by filing negligent design action stemming from decedent's allegedly accidental fall from window, because plaintiff placed decedent's mental condition at issue by filing suit);[7] *Maxwell v. Hobart Corporation*, 216 Ill.App.3d 108, 159 Ill.Dec. 599, 576 N.E.2d 268, 271–72 (1991) (holding confidentiality protection for alcohol treatment records waived by filing negligence and strict liability action stemming from plaintiff injuring his hand working with machine manufactured by defendant, where blood alcohol test after accident revealed plaintiff had blood alcohol level of 0.136%; court reasoned plaintiff's sobriety related to his ability to properly operate machinery, and in turn, on plaintiff's comparative fault). While these decisions are not binding on this Court, we find their reasoning persuasive on this issue of first impression.[8]

■ It must be emphasized that evidentiary privileges have been viewed by this Court to be in derogation of the search for truth, and are generally disfavored for this reason. *See Commonwealth, Department of Transportation v. Taylor*, 576

7. One justice dissented in part, stating the majority's decision forced the plaintiff to make a Hobson's choice—reveal spousal confidences or forego the right to seek redress for a grievous wrong. *Id.*, 422 N.Y.S.2d 911, 398 N.E.2d at 524 (Cooke, C.J., dissenting in part). The majority responded by noting the dissent's position overemphasized the injustice presented by the situation at hand, as there would be no grievous wrong to redress if the decedent actually committed suicide. *Id.*, 422 N.Y.S.2d 911, 398 N.E.2d at 522 n. 5.

8. However, we do not subscribe to a standard as relaxed as that applied in some of these cases, *i.e.*, a plaintiff implicitly waives confidentiality protections by filing a lawsuit in which his mental health records could be "potentially relevant" to the disputed legal issue. Allowing a defendant to initiate a fishing expedition into a plaintiff's mental health records to explore whether any information may be potentially relevant or contradictory to the subject of the action would destroy the purpose of the MHPA's privilege and its confidentiality protections. As discussed below, we instead employ a more limited approach for finding implicit waiver.

Pa. 622, 841 A.2d 108, 118 (2004) (Nigro, J., dissenting) ("It is well established that evidentiary privileges . . . are generally disfavored and should be narrowly construed." (citation omitted)); *Commonwealth v. Stewart*, 547 Pa. 277, 690 A.2d 195, 197 (1997) (discussing clergy-communicant privilege, noting courts should accept privileges " 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth' " (citation omitted)); *Hutchison v. Luddy*, 414 Pa.Super. 138, 606 A.2d 905, 909 (1992) (" '[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth.' " (quoting *Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979))). The effect of that concern in this case is obvious. Accordingly, we hold a patient waives his confidentiality protections under the MHPA where, judged by an objective standard, he knew or reasonably should have known his mental health would be placed directly at issue by filing the lawsuit.[9]

▮ Here, the standard is met solely because the state police issued a report, based on disinterested eyewitness interviews, finding James attempted to commit suicide by jumping under the truck's trailer. This conclusion put appellants on notice that if they filed a civil action, appellees would likely advance a suicide defense and use James's purported mental infirmity in order to absolve them of any liability. Also, appellants had knowledge appellees would seek all information regarding James's history of suicidal ideations that may be

9. As this Court finds appellants have impliedly waived the MHPA's confidentiality protections by filing the instant negligence suit, we do not reach the issue of whether their complaint constitutes "written consent" for purposes of § 7111. We also do not reach appellants' argument that the evidence sought is inadmissible character evidence. In point, assuming the evidence sought does constitute inadmissible character evidence, such does not necessarily preclude it from being discovered. *See* Pa.R.C.P. 4003.1(b) ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

entirely decisive of liability and, because James is deceased, is not available elsewhere.[10] Thus, appellants knew or reasonably should have known James's mental health would be placed directly at issue by filing the lawsuit.[11]

We utilize our authority in this area carefully and urge courts to use great caution in accepting this form of implicit waiver. The importance of the confidentiality protections afforded by the MHPA cannot be overemphasized, and those protections must not be ignored in deciding whether a patient impliedly waived the privilege. However, under the facts of the instant case, barring appellees access to James's mental health records would be manifestly unfair and grossly prejudicial. To allow appellants to pursue a negligence action while hiding behind a statutory privilege claim—essentially wielding the legislature's intended shield as a sword—would offend the

10. Appellants argue, since appellees can contest liability through less intrusive means, *e.g.*, an accident reconstruction or eyewitness testimony, discovery of James's mental health records should be precluded. However, this argument is based upon a faulty understanding of the less-intrusive-means analysis, which only applies when there are other, less intrusive methods of obtaining the same type of information, not simply other available means of proving one's case. *See, e.g., Cooper v. Schoffstall*, 588 Pa. 505, 905 A.2d 482, 495 (2006) (holding defense expert's financial records not discoverable where plaintiff asserted need for such records to show expert bias, because less intrusive means existed to obtain same information—i.e., interrogatories); *M.M. v. L.M.*, 55 A.3d 1167, 1174–75 (Pa.Super.2012) (denying mother access to father's mental health records in context of custody dispute, reasoning less intrusive alternatives such as updated psychiatric evaluation existed for obtaining same information). Appellees are seeking access to James's mental health records to obtain information about his mental state, information which is not obtainable through the use of accident reconstruction or eye-witness accounts of the incident and, further, is not available through independent psychological evaluation or interrogatories since James is deceased. Accordingly, the less intrusive means analysis has no application to the discoverability of James's mental health records.

11. Appellants did not raise allegations of mental injuries in their amended complaint. Their complaint differs from the *Kraus* and *Gormley* complaints, which expressly included allegations of mental injuries, thereby placing mental health directly at issue as to damages. Notwithstanding, because there was objective evidence suggesting suicide, appellants knew that by commencing suit and alleging James's physical injuries were caused by appellees' negligence, they were placing his mental health directly at issue as to causation.

most basic understanding of fairness and justice. As such a result would be unreasonable, it cannot be what the General Assembly intended. *See* 1 Pa.C.S. § 1922(1). Rather, it "must have intended the privileges to yield before the state's compelling interest in seeing that truth is ascertained in legal proceedings and fairness in the adversary process[,]" *Kraus,* at 1145 (citation and internal quotation marks omitted); *see also O'Boyle,* at 522 (citations omitted); thus, implied waiver is justified in this case.

Moreover, under the Commonwealth Court's holding, such records are subject only to *in camera* review,[12] and information provided to appellees will be limited to that which bears on James's suicidal ideations; thus, the intrusion upon James's privacy will be minimal and limited to the extent necessary to promote the interests of justice. Accordingly, this Court finds the Commonwealth Court did not err in ordering disclosure of James's mental health records for *in camera* review and response to Interrogatory No. 63.

Order affirmed. Jurisdiction relinquished.

Former Justice McCAFFERY did not participate in the decision of this case.

Chief Justice CASTILLE and Justices BAER and STEVENS join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice TODD files a dissenting opinion.

Justice SAYLOR, dissenting.

The Mental Health Procedures Act (MHPA) contains a proviso that "[i]n no event" may privileged communications be disclosed without "written consent." 50 P.S. § 7111(a). As Madame Justice Todd observes, this appears to foreclose the

12. We encourage trial courts to proceed with caution in conducting *in camera* review in these matters, as the statutory privilege is only waived as to the particular information directly related to the subject of the litigation. Taking such a balanced approach safeguards the patient's confidentiality protections and ensures fairness and integrity within the judicial system.

possibility that, consistent with legislative intent, a non-written waiver may be implied from the circumstances. *See* Dissenting Opinion, at 144–45, 103 A.3d at 1265. Accordingly, I cannot join the Court's present holding that Appellants "have impliedly waived the MHPA's confidentiality protections by filing the instant negligence suit[.]" Majority Opinion, at 140 n. 9, 103 A.3d at 1262 n. 9.[1]

With that said, I also think that, where there is an objective basis in the record to believe that the plaintiff's mental-health records are relevant to liability (in this case, for example, records that reflect past suicide attempts), it may be fundamentally unfair to the defendant to deny access to such information—at least subject to the screening process of an *in camera* inspection so as to prevent unwarranted disclosures. Indeed, as Appellees emphasize, lack of access could allow Appellants to conceal evidence that might absolve them of liability. Hence, it seems that, in such a scenario, the act's confidentiality provision, as applied, can potentially violate due process. *See Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir.2000) (noting that due process is violated where a court's evidentiary rulings are grossly prejudicial and deny fundamental fairness); *Mercy Convalescent Home, Inc. v. DPW*, 96 Pa.Cmwlth. 217, 221, 506 A.2d 1010, 1013 (1986) ("The essence of due process is fundamental fairness in view of all facts and circumstances of a case."); *cf. Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (holding that due process is offended when the prosecution withholds favorable evidence from an accused that would tend to exculpate him or reduce the penalty imposed).[2]

1. Some state legislatures have statutorily incorporated the waiver concept in the form of a patient-litigation exception. *See, e.g.,* CAL. EVID. CODE § 1016; 740 ILL. COMP. STAT. 110/10(a). Our Legislature has codified a similar exception with regard to physician-patient confidentiality. *See* 42 Pa.C.S. § 5929; *Ferrell v. Glen–Gery Brick*, 678 F.Supp. 111, 112 (E.D.Pa.1987). Thus, it may be assumed that the Legislature knew how to include a similar exception in the MHPA, but elected not to do so.

2. Whether a due process challenge was raised before the common pleas court would be a question to be addressed by that court in the first instance. Here, I simply note that Appellees argued that denying them access to evidence of the plaintiff's suicidal tendencies or past instances of self-inflicted harm would violate their right to a fair trial and would

However, the issue raised on appeal to the intermediate court was framed solely in terms of implied waiver, *see Octave v. Walker*, No. 532 & 540 C.D.2011, Brief for Appellants, at 4; that tribunal disposed of the appeal on such terms, *see Octave v. Walker*, 37 A.3d 604, 610 (Pa.Cmwlth.2011); and the question accepted for review in this Court is similarly limited, *see Octave v. Walker*, 619 Pa. 176, 176, 58 A.3d 753, 754 (2012) (framing the issue for review as whether Appellants "impliedly waived the protections" of Section 7111(a) by filing the lawsuit). That being the case, it is beyond the scope of the present appeal to consider which records must be provided to Appellees in order to avoid a due process violation.

Accordingly, I would reverse the order of the Commonwealth Court and remand to the common pleas court to determine whether a due process challenge is pending in that court and, if so, which records (if any) must be provided to avoid a constitutional violation.

Justice TODD, dissenting.

The language in Section 7111 of the Mental Health Procedures Act that is central to this appeal states: "All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone," subject to certain exceptions not relevant herein. 50 P.S. § 7111(a). I would be hard-pressed to conceive of a more emphatic directive from our General Assembly. Indeed, this Court, in addressing Section 7111, has deemed it "unambiguous," "unmistakable," and "mandatory," concluding:

> be manifestly unfair, grossly prejudicial, and amount to a miscarriage of justice. *See Octave. v. Walker*, Civil No. 4128 of 2009, Defendants' Brief in Support of Motion for Leave to Access and Copy Sealed Files Pertaining to Plaintiff's Involuntary Psychological Treatments, at 5–7; *see also id.*, Defendants' Brief in Support of Motion to Compel Medical Authorizations Pertaining to Plaintiff's Mental Health Treatment and/or Involuntary Psychiatric Commitments, at 4–5. Thus, on the present state of the record, I cannot foreclose the possibility that Appellees have, in effect, forwarded a due-process challenge to application of Section 7111(a) in the circumstances.

The release of the documents is contingent upon the person's written consent and the documents may not be released *"to anyone"* without such consent. The terms of the provision are eminently clear and unmistakable and the core meaning of this confidentiality section of the Mental Health Procedures Act is without doubt—there shall be no disclosure of the treatment documents to anyone.

*Zane v. Friends Hosp.*, 575 Pa. 236, 836 A.2d 25, 32 (2003) (emphasis original); *see also id.* at 33 ("Unless there is consent or if one of the exceptions applies, documents regarding treatment shall be kept confidential and may not be released or their contents disclosed to anyone."). Yet, despite this manifest statutory mandate, and our holding in *Zane*, the majority finds room for an implied waiver. As, in my view, the statutory language is, indeed, unmistakable—i.e., the only way in which information covered by Section 7111 may be disclosed is pursuant to a written release—I cannot join the majority's pronouncement to the contrary.

Nevertheless, I recognize the inequity that drives the majority's analysis: it is untenable for a plaintiff to sue for relief where matters otherwise protected by Section 7111 are critical to the defense of that action, but, at the same time, expect those matters to remain confidential *and* expect to proceed with the suit. However, instead of running afoul of a statutory mandate in an effort to avoid such an unjust result, I would encourage that such matters be addressed in the context of discovery, in a manner such as that initiated by Appellees below.

Here, Appellees filed interrogatories and sought access to information pertaining to Appellant James Octave's mental health treatment; when Appellants objected, Appellees filed a motion to compel Appellants to provide written consent pursuant to Section 7111, detailing in the motion the relevance of that information to their defense. *See* Motion to Compel, 2/25/10 (R.R. at 73). The trial court was then in a position to assess the significance of the information to the defense, and, had it deemed the information sufficiently material, issue an

order compelling the authorizations be executed.[1] Such an approach respects the command of Section 7111—by ensuring that Section 7111 information is released only pursuant to written consent—but allows the trial court to fashion an appropriate discovery sanction should a plaintiff refuse to provide the consent, including dismissal of the case.

Discovery matters are vested in the trial court's sound discretion. *Rae v. Pennsylvania Funeral Directors Ass'n,* 602 Pa. 65, 977 A.2d 1121 (2009). Further, under Pa.R.Civ.P. 4019, courts are afforded wide discretion in fashioning remedies or sanctions for violations of discovery rules and orders. *City of Philadelphia v. FOP Lodge No. 5 (Breary),* 604 Pa. 267, 985 A.2d 1259, 1269 (2009). In a case such as the instant one, a trial court, with the pleadings, motions, and arguments of the parties before it, can best decide if a defendant's stated need for a plaintiff's mental health information is substantial enough to warrant ordering a plaintiff to execute Section 7111 consent for release of the information. Similarly, should a plaintiff refuse to provide the consent, the trial court is in the best position to decide the appropriate sanction for that refusal, including dismissal. With respect to the appropriate sanction, we have provided clear guidance in how a trial court must make that determination.[2] *See id.* at 1270 (in assessing severity and materiality of a discovery sanction, trial court must assess: (1) the prejudice endured by the non-offending party and the ability of the offending party to cure; (2) the offending party's willfulness or bad faith in failing to provide the requested discovery materials; (3) the importance of the excluded evidence; and (4) the number of discovery violations by the offending party). While the sanction of dismissal is disfavored, *id.* at 1269–70, I can certainly envision a case where dismissal would be the appropriate result where access to a plaintiff's mental health information was pivotal to a

1. The trial court denied Appellees' motion, concluding that, after Appellants amended their complaint, James Octave's mental health treatment records were no longer relevant. I agree with the majority's implicit conclusion that this determination was in error.

2. Of course, these determinations are then subject to appellate review for an abuse of discretion.

defense, but refused. Indeed, the instant matter may be an example of such a case.

Accordingly, I disagree with the majority's decision to affirm the Commonwealth Court's extra-statutory determination that Section 7111 protections may be implicitly waived, and so would reverse that decision. However, because I agree with the majority that the requested information was material to Appellee's defense, I would remand the matter to the trial court to grant Appellee's motion to compel the execution of Section 7111 consent. Should Appellants refuse, I would leave the appropriate sanction to the trial court's discretion, pursuant to the considerations set forth in *City of Philadelphia, supra.*

Accordingly, I dissent.