J-S73002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICKY TEJADA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CERTIFIED NURSE PRACTITIONER GONZALEZ OF SCI SMITHFIELD, | |
| Appellee | No. 622 MDA 2014 |

Appeal from the Order March 4, 2014
In the Court of Common Pleas of Huntingdon County
Civil Division at No(s): 2013-01439

BEFORE:  BOWES, WECHT, and MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 10, 2015**

Ricky Tejada appeals the order entered on March 4, 2014, wherein the trial court overruled his objection to Appellee's[1] petition for discovery of his medical and mental health records from the correctional facility where he is incarcerated.  We affirm.

Appellant is currently serving an aggregate term of twenty to forty years incarceration for attempted homicide, aggravated assault, simple assault, and reckless endangerment in connection with the shooting of Luis Villatoro.  **See Commonwealth v. Tejada**, 834 A.2d 619 (Pa.Super. 2003). Lynn Gonzalez ("Nurse Gonzalez") is a certified nursing practitioner who

---

[1] As the caption accurately reflects, Appellant initiated this action against certified nursing practitioner Gonzalez of SCI Smithfield.  That party is identified in the certified record as Lynn Gonzalez.

administers health care to prisoners, presumably pursuant to a contract with the Department of Corrections or the individual correctional facilities. While incarcerated at SCI Camp Hill, Appellant was placed in the restricted housing unit. He was subsequently transferred to the equivalent housing unit at SCI Smithfield.

During September 2013, Appellant contacted the medical staff at SCI Smithfield to obtain multivitamins and dandruff shampoo pursuant to prescriptions[2] that he was issued while imprisoned at SCI Camp Hill. However, the health care administrator at SCI Smithfield determined that Appellant's prescriptions had been discontinued when Appellant arrived at that facility. Additionally, the health care administrator denied Appellant's request for HIV and hepatitis testing. Appellant filed a formal grievance regarding the administrator's decisions, and the prison issued a response on October 1, 2013, informing him that Nurse Gonzalez reviewed his case and determined that no clinical reasons existed to order the requested treatment or diagnostic tests.

---

[2] Appellant styles the documents authorizing the vitamins and dandruff shampoo as prescriptions; however, the prison documents contained in the certified record refer to the authorizations interchangeably as prescriptions and subscriptions. While nothing in the record suggests that Appellant would have required prescriptions to obtain the instant over-the-counter medications if he was not incarcerated, we refer to the authorizations as prescriptions for consistency.

On October 30, 2013, Appellant initiated the underlying proceedings by writ of summons. Thereafter, he filed a request for pre-complaint discovery. Nurse Gonzalez objected to the discovery request and countered with a rule to file a complaint. The trial court sustained her objection to discovery and issued a rule directing Appellant to file his civil complaint. Appellant failed to file a formal complaint; however, on February 6, 2014, he filed a self-styled "Pa.R.C.P. 1001 Action" wherein he alleged, albeit clumsily, that Nurse Gonzalez (1) fraudulently refused to provide him health care; (2) breached an implied contract and fiduciary duty owed to Appellant; and (3) inflicted emotional distress. As it relates to the final count regarding emotional distress, Appellant specifically alleged that Nurse Gonzalez's actions created in him,

> a despair so fiery [that] a phobia of some sort developed as he encountered other medical staff due to such mental anguish. As a direct and proximate result of [Nurse Gonzalez's] actions, he has trouble sleeping and lives with the fear that he might die or get seriously ill because of [Nurse Gonzalez's] concept of health care.

Pa.R.C.P. 1001 Action, 2/6/14, at 6-7.

Additionally, on the same date, Appellant filed an application for relief, wherein he averred that (1) he "has a right to diagnosis as well as treatment [for] illnesses per 37 Pa.Code 93.12 and 91.2 . . . for **cancer**[;]" and that Appellee injured him by "refusing to not only diagnose, but [also] treat the plaintiff for hepatitis[,] which can be fatal." Application for relief, 2/6/14, 1 (emphasis in original). Appellant entreated that the trial court order Ms.

Gonzalez to "administer blood tests for diagnostic purposes and competently treat any and all illness confirmed forthwith[.]" *Id*. at 2.

On February 12, 2014, Nurse Gonzalez issued notice of her intent to serve subpoenas to produce documents pursuant to Pa.R.C.P. 4009.22. Specifically, Nurse Gonzalez requested, *inter alia*, Appellant's medical and mental health records and documentation of any grievance and misconduct proceedings at SCI-Smithfield relating to this case. Appellant objected to the proposed request, and the trial court overruled the objections on March 4, 2014. Thereafter, Appellant filed a petition to certify the March 4, 2014 order as an appealable interlocutory order, presumably pursuant to Pa.R.A.P. 312. The trial court denied Appellant's petition summarily. Undaunted, however, on March 19, 2014, Appellant filed a *pro se* notice of appeal from the March 4, 2014 order. The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Instead, the trial court issued a one-page memorandum wherein it concluded that the March 4, 2014 order was an interlocutory order and requested that this Court dismiss the appeal. The trial court did not address the merits of Appellant's assertion that the information was privileged.[3]

_____

[3] Indeed, the trial court interpreted Appellant's argument as asserting that the medical and mental health records that Nurse Gonzalez sought were irrelevant.

Meanwhile, prior to filing the notice of appeal, Appellant filed a motion for a protective order seeking to prevent Nurse Gonzalez from reviewing the requested documents. That motion was also denied, and Nurse Gonzalez ultimately served the proposed subpoenas. She indicates in her brief that SCI-Smithfield subsequently produced part of Appellant's health records along with documentation that Appellant had surreptitiously destroyed the remainder of his medical file while examining it on October 15, 2014.

Appellant levels one question for our review, which we restate for clarity as follows: Whether the trial court erred in overruling Appellant's objection to Nurse Gonzalez's notice to issue a subpoena to produce documents relating to, *inter alia*, Appellant's medical and mental health records at SCI-Smithfield. **See** Appellant's brief at 5.

At the outset, we confront whether the March 4, 2014 order overruling Appellant's objection to Nurse Gonzalez's discovery request was appealable. The March 4, 2014 order is neither final nor appealable as of right. **See Gormley v. Edgar**, 995 A.2d 1197, 1200 (Pa.Super. 2010) (generally, order compelling discovery is not final); Pa.R.A.P. 311 and 341. Additionally, Appellant does not challenge the trial court's denial of his request to appeal the interlocutory order by permission pursuant to Rule 312. Instead, he asserts that the March 4, 2014 order is reviewable as a collateral order pursuant to Pa.R.A.P. 313. He supplemented this position in subsequent

correspondence with this Court that we initiated *sua sponte* to determine the propriety of this appeal.

Discovery orders involving claims of privilege are subject to Rule 313. *Id*. In *In re W.H.*, 25 A.3d 330, 334-335 (Pa.Super. 2011), we summarized the pertinent considerations as follows:

> Under Pennsylvania law, an appeal may be taken only from an interlocutory order appealable as of right, a final order, a collateral order, or an interlocutory order by permission. *Radakovich v. Radakovich*, 846 A.2d 709, 714 (Pa.Super. 2004); Pa.R.A.P. 311, Pa.R.A.P. 312, Pa.R.A.P. 341. [The order] is not a final order or a interlocutory order appealable by right or permission[. Hence,] we must determine whether it is reviewable as a collateral order.
>
> Our Supreme Court codified the collateral order doctrine into Pa.R.A.P. 313. Rule 313 provides as follows:
>
> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or a lower court.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

In addition, the *In re W.H.* Court continued,

> The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is

postponed until final judgment in the case, the claimed right will be irreparably lost. *See* Pa.R.A.P. 313; *see also Witt v. LaLonde*, 2000 PA Super 347, 762 A.2d 1109, 1110 (Pa.Super. 2000) (citations omitted).

*In Re J.S.C.*, 851 A.2d 189, 191 (Pa.Super. 2004). Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. *Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999). To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied. *J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa.Super. 2004).

*In re W.H.*, *supra* at 335.

In *Dougherty v. Heller*, 97 A.3d 1257 (Pa.Super. 2014) (*en banc*), this Court recently confronted a similar issue, and concluded that an appeal from an order denying a motion for a protective order regarding whether to videotape a deposition satisfied Rule 313. In *Dougherty*, a self-described public figure sued a journalist for critical remarks published in a column that the journalist authored. While the journalist later retracted the comments and issued an apology in the hardcopy publication, she delayed removing her original statements from her Facebook page, and the story remained accessible on a third-party website for approximately two years. During discovery, the journalist desired to videotape Dougherty's deposition testimony. Dougherty objected to the use of video on the ground that potentially embarrassing or inflammatory portions of the recording could be released to the public. Thereafter, Dougherty filed a motion for protective order, which the trial court denied.

Prior to reviewing the merits of the ensuing appeal, we reasoned that (1) the assertion of a privacy interest in pretrial discovery was separable from the underlying defamation claim; (2) privacy rights "[fall] within the class of rights that are too important to be denied review[;]" and (3) the privacy interest would be irreparably lost absent collateral review. *Id*. at 1262-1263 (quoting *Melvin v. Doe*, 836 A.2d 42, 50 (Pa. 2003)). Thus, we concluded that Dougherty's invocation of his privacy interest was suitable for collateral review.

Herein, similar to the scenario we addressed in *Dougherty*, the order overruling Appellant's objection to Nurse Gonzalez's discovery request satisfies Rule 313. First, Appellant's assertion of a privacy interest in pretrial discovery is clearly separable from his fraud, breach of contract, and intentional infliction of emotional distress claims. Stated simply, we need not examine the merits of Appellant's underlying claims in order to determine the extent of his privacy interest in his medical and mental health records. Second, mindful of the protection this Court has afforded the right to privacy in pretrial discovery, we find that Appellant's privacy interests in his medical and mental health records are sufficiently important to warrant collateral review of a discovery ruling. *See Dougherty*, *supra* (collecting cases) *Rhodes v. USAA Cas. Ins. Co.*, 21 A.3d 1253, 1258 (Pa.Super. 2011) (collateral review of discovery order involving purportedly privileged material); *J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa.Super. 2004) (witness's privacy interest in income was suitable for collateral review);

***Commonwealth v. Alston***, 864 A.2d 539, 546 (Pa.Super. 2004) (collateral review of privacy interests relevant to pretrial psychiatric evaluation).

Finally, we observe that Appellant's requested relief, *i.e.*, precluding Nurse Gonzalez from accessing his medical and mental health records, might be irreparably lost if review is postponed until the civil case is resolved. As we explained in ***Dougherty***, ***supra*** at 1263 (citations omitted), "The nature of a litigant's privacy interest is similar to a defamation defendant's First Amendment right to anonymity, or a litigant's property interest in a trade secret. In each case, an appellant seeks to keep private or secret what may otherwise become public, and in each case, the loss of privacy or secrecy would be irreparable." Thus, we must address the propriety of the trial court order directing Appellant to reveal his medical and mental health records at this preliminary stage of the civil litigation. Once the confidential information is released, the effect of the trial court's decision on Appellant's privacy rights cannot be negated. As we conclude that the March 4, 2014 order satisfied all three prongs of the collateral order doctrine, this appeal is proper.

The following legal principle frames our review of the discovery request. "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." ***Gormley***, ***supra*** at 1202.

- 9 -

Characterizing his cause of action against Nurse Gonzalez as an impairment of contract, Appellant asserts that the discovery request for his psychiatric records and files concerning infectious diseases was tantamount to an irrelevant "fishing expedition" that was performed in "bad faith[.]" Appellants brief at 10. He continues that the court's discovery order impermissibly infringed on his right of confidentiality pursuant to Pa.R.C.P. 4011 (a)(c) and (d).[4] Relying on Pa.R.C.P. 4012, regarding protective orders, he further contends that the trial court erred in failing to limit the scope of discovery and order that the matter of his medical and mental health records were not subject to disclosure. *Id*. at 10-11. Additionally, Appellant alludes to 42 Pa.C.S §§ 5929 and 5944 concerning the respective statutory privileges covering the physician/patient and psychologist/patient

---

[4] Pa.R.C.P. 4011, styled Limitation of Scope of Discovery, provides as follows:

> No discovery, including discovery of electronically stored information, shall be permitted which
>
> (a) is sought in bad faith;
>
>     . . . .
>
> (c) is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6;
>
> (d) is prohibited by any law barring disclosure of mediation communications and mediation documents[.]

relationships.[5]    However, Appellant's precise argument relative to these
provisions is unclear.

_____

[5] Those statutes, which apply to depositions and witnesses in civil cases,
provide as follows:

> § 5929. Physicians not to disclose information
>
> No physician shall be allowed, in any civil matter, to disclose any
> information which he acquired in attending the patient in a
> professional capacity, and which was necessary to enable him to
> act in that capacity, which shall tend to blacken the character of
> the patient, without consent of said patient, except in civil
> matters brought by such patient, for damages on account of
> personal injuries.
>
> [. . . .]
>
> § 5944. Confidential communications to psychiatrists or licensed
> psychologists
>
> No psychiatrist or person who has been licensed under the act of
> March 23, 1972 (P.L. 136, No. 52), . . . to practice psychology
> shall be, without the written consent of his client, examined in
> any civil or criminal matter as to any information acquired in the
> course of his professional services in behalf of such client. The
> confidential relations and communications between a
> psychologist or psychiatrist and his client shall be on the same
> basis as those provided or prescribed by law between an
> attorney and client.

42 Pa.C.S. §§ 5929, 5944.   We observe that § 5929, which creates the
physician/patient privilege, expressly provides that the privilege is waived in
civil matters for personal injury.   Although this provision is potentially
applicable herein, since Appellant's artless *pro se* pleadings sought damages
in assumpsit rather than tort, we forgo a mechanical application of § 5929 to
waive the confidentiality of Appellant's prison medical file.   Section 5944
does not contain a similar waiver provision.

Nurse Gonzalez counters that, by alleging specific medical and mental health injuries in his complaint, Appellant waived the privileges of confidentiality that he seeks to invoke. This argument is founded upon our holding in **Kraus v. Taylor**, 710 A.2d 1142 (Pa.Super. 1998), *appeal dismissed as improvidently granted*, 743 A.2d 451 (Pa. 2000) (*per curiam*) and **Gormley supra**. In **Kraus**, the plaintiff-appellant sued Taylor for negligence after the automobile Taylor was operating struck Kraus while Kraus was attempting to cross a road at approximately 12:00 a.m. Kraus sought damages for, *inter alia*, permanent injuries stemming from the collision. During the ensuing jury trial, Taylor presented Kraus's medical records to establish that Kraus suffered from chronic drug and alcohol abuse and submitted evidence that Kraus's blood alcohol content exceeded 0.25 percent when the collision occurred. As it relates to the issue that is pertinent in the case at bar, Kraus invoked the statutory privileges outlined in "50 P.S. § 7111 (confidentiality of records of treatment in publicly funded mental facilities), 71 P.S. § 1690.108 (confidentiality of records of drug and alcohol abuse treatment), and 42 Pa.C.S. § 5944 (confidentiality of communications to licensed psychologists)" to preclude the evidence of his prolonged substance abuse. **Id**. at 1144.[6] In overruling the objections, the

_____

[6] In addition, Kraus asserted that, as a pedestrian, evidence of his intoxication at the time of the accident was irrelevant. The trial court rejected this position, and we affirmed the court's ruling on appeal.

trial court concluded that Kraus impliedly waived the statutory privileges of confidentiality by filing a personal injury suit that placed his life expectancy at issue.

On appeal, we were tasked with determining whether the evidence of Kraus's history of drug and alcohol abuse was admissible. We held that Kraus waived the confidentiality provisions expressed in the Mental Health Procedures Act ("MHPA") and the Judicial Code. Specifically, we reasoned,

> Allowing appellant to pursue a claim for permanent injury, while simultaneously barring appellees from access to appellant's long history of drug and alcohol abuse, would be manifestly unfair and grossly prejudicial. We cannot believe that the Pennsylvania General Assembly intended to allow a plaintiff to file a lawsuit and then deny a defendant relevant evidence, at plaintiff's ready disposal, which mitigates defendant's liability. Rather the General Assembly must have intended the privileges to yield before the state's compelling interest in seeing that truth is ascertained in legal proceedings and fairness in the adversary process. Accordingly, we conclude that appellant impliedly waived the various statutory privileges he asserts by filing this lawsuit. Because the records were not privileged and it was within the court's discretion to admit the evidence, the trial court committed no reversible error in admitting the records of appellant's chronic alcohol and drug abuse.

*Id*. at 1145 (quotation marks and citations omitted). Hence, **Kraus** stands for the proposition that, since a plaintiff's prolonged substance abuse effects the length of time the person is expected to live, it can be properly admitted at trial to refute the use of standard life expectancy charts for purposes of a future-wage-loss claim.

Similarly, in **Gormley**, **supra**, we addressed whether the plaintiff in a personal injury action to recover damages for injuries sustained in a motor vehicle accident was required to produce certain medical records. The plaintiff invoked the confidentiality provisions contained in § 7111(a) of the MHPA, the Mental Health and Mental Retardation Act of 1966, the Pennsylvania Drug and Alcohol Abuse Control Act, and § 5944 of the Judicial Code which we reproduced *supra*. After determining that the plaintiff's reliance upon the first three provisos was misplaced, we concluded that the privilege relating to a patient's confidential communications with a psychologist applied to that case, but was waived because the plaintiff placed her mental health at issue by seeking damages for anxiety. We reasoned,

> "The purpose of the psychologist/patient privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure." **Zane v. Friends Hospital**, [836 A.2d 25, 33 (Pa. 2003)]. The privilege is based upon a strong public policy designed to encourage and promote effective treatment and to insulate the client's private thoughts from public disclosure. **Kalenevitch v. Finger**, 407 Pa.Super. 431, 595 A.2d 1224 (1991). This Court holds this privilege in the highest regard, recognizing that such confidential statements are the key to the deepest, most intimate thoughts of an individual seeking solace and treatment. However, such confidential communications are only protected to the same extent as those between an attorney and his client. The privilege is not absolute; it may be waived. Our Commonwealth Court in **Rost v. State Board of Psychology**, 659 A.2d 626, 629 (Pa.Cmwlth.1995), held that the privilege may be waived in civil actions "where the client places the confidential information at issue in the case." In those circumstances, the client himself or herself has turned the key to voluntarily unlock those privileged communications.

*Id*. at 1204 (footnote omitted). Thereafter, we held, "Ms. Gormley directly placed her mental condition at issue when she alleged that she suffered from anxiety as a result of the accident. . . . It would clearly be unfair for a party to seek recovery for anxiety if that mental health issue predated the accident." *Id*. at 1206.

Instantly, Nurse Gonzalez asserts that Appellant's purported injuries stemming from her alleged failure to diagnose and treat his hypothetical conditions and infections, which he feared were terminal, and her allegedly improper refusal to supply the requested dandruff shampoo and multivitamins opened the door to her discovery of Appellant's pertinent medical and mental health files. Referring to the perspective we reiterated in *Gormley*, Nurse Gonzalez posits that a plaintiff cannot initiate a lawsuit and then deny the defendant access to relevant evidence that would mitigate the defendant's liability. Nurse Gonzalez's brief at 2 (unpaginated). For the following reasons, we agree.

In *Octave ex rel. Octave v. Walker*, 103 A.3d 1255 (Pa. 2014), a case involving the applicability of the confidentiality provisions articulated in the MHPA, our Supreme Court addressed whether, and under what circumstances, a plaintiff to a civil action may waive statutory confidentiality protections. In that case, the plaintiff, the wife of the decedent, filed a complaint in her own right and on behalf of the decedent. The lawsuit stems from an incident in which the decedent jumped under the trailer section of a moving tractor-trailer rig. While the decedent survived the initial incident,

the mental and physical trauma rendered him incapacitated, and he later died from his injuries.

Following an inquiry of disinterested eyewitnesses, the Pennsylvania State Police issued a report finding that the decedent had attempted to commit suicide by jumping under the trailer of the truck. Nevertheless, the plaintiff filed the underlying lawsuit alleging, *inter alia*, that the Pennsylvania Department of Transportation ("DOT") and the operator of the truck were negligent. As reported by the High Court, "The complaint alleged [decedent] suffered a number of mental and physical injuries as a result of the incident and sought damages." *Id*. at 1256. The defendants filed a motion for leave to access and copy sealed files pertaining to the decedent's involuntary commitments pursuant to the MHPA. The trial court denied the motion, the Commonwealth Court reversed, and our Supreme Court granted allocatur.

Framing the issue as a case of first impression, the High Court examined this Court's holdings in *Kraus* and *Gormley* in relation to the prevailing perspective of our sister jurisdictions and federal courts applying state law. Noting that it viewed evidentiary privileges "to be in derogation of the search for truth, and . . . generally disfavored[,]" the Court held, "a patient waives his confidentiality protections under the MHPA where, judged by an objective standard, he knew or reasonably should have known his mental health would be placed directly at issue by filing the lawsuit." *Id*. at

1262.[7] The Court applied the newly-announced standard to the facts of the case therein and concluded that, in filing the suit against the defendants, the plaintiff knew that the defendants would invoke the police report as evidence that the decedent attempted to commit suicide by jumping under the truck's trailer. The Court opined, "[the police report] put appellants on notice that if they filed a civil action, appellees would likely advance a suicide defense and use [the decedent's] purported mental infirmity in order to absolve them of any liability." *Id*. at 1263.

While the instant case does not implicate the MHPA, our Supreme Court's rationale applies herein. Similar to the High Court's perspective of the facts in *Octave ex rel. Octave*, *supra*, we find that Appellant in the case at bar knew or reasonably should have known that his medical and mental health records would be placed directly at issue by filing the lawsuit against Nurse Gonzalez. Specifically, Appellant complained, *inter alia*, that Nurse Gonzalez caused him to suffer severe emotional distress based on her

---

[7] The Supreme Court implored trial courts to "use great caution in accepting this form of implicit waiver [in light of] the importance of the confidentiality protections afforded by the MHPA[.]" *Octave ex rel. Octave v. Walker*, 103 A.3d 1255, 1263 (Pa. 2014). The High Court also praised the Commonwealth Court for directing that the mental health records were only subject to *in camera* review. *Id*. at 1264. Although the present case does not concern the MHPA, we recognize that the trial court did not expressly limit Appellant's records to *in camera* review. Inasmuch as the basis and scope of Appellant's assertion of confidentiality are unfocused, the trial court's failure to limit review of the records to an *in camera* inspection does not alter our disposition.

fraudulent refusal to provide him health care. He also sought damages for Nurse Gonzalez's alleged failure to detect cancer or diagnose potential hepatitis and HIV infections. However, Appellant not only failed to assert if or when he developed any of the foregoing conditions, he also failed to document when he developed the fiery despair, phobia, and insomnia that he attributes to Nurse Gonzalez's actions. Thus, Appellant was on notice that, when he filed the civil action against Nurse Gonzalez, she would likely assert the absence of any diagnoses as a defense to liability for the alleged refusal to provide health care, and rely upon the dearth of records documenting Appellant's claimed injury to absolve herself from any exposure to damages associated with the potentially specious lawsuit.

Thus, pursuant to our High Court's rationale in ***Octave ex rel. Octave***, ***supra*** and our holdings in ***Kraus*** and ***Gormley***, Appellant implicitly waived any claims of privilege regarding the discovery of his relevant medical and mental health records. We therefore affirm the trial court order overruling Appellant's objection to Nurse Gonzalez's discovery request.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/10/2015