J-A09033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JANE ELLEN WEISMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MICHAEL PAUL WEISMAN | |
| Appellee | Nos. 1471 EDA 2014, 1472 EDA 2014, 1473 EDA 2014, 1474 EDA 2014 |

Appeal from the Orders Entered May 15, 2013, August 8, 2013, and April 7, 2014, and from the Decree Entered March 26, 2014
In the Court of Common Pleas of Montgomery County
Domestic Relations at No: 99-08626

BEFORE:  BOWES, DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                                    **FILED JULY 14, 2015**

Appellant, Jane Ellen Weisman, appeals from the trial court's March 26, 2014 divorce decree.  That decree rendered final the trial court's orders of May 15, 2013, August 8, 2013, which also are on appeal.  In addition, Appellant appeals from the trial court's April 7, 2014 order directing her to pay counsel fees.  We affirm in part, vacate in part, and remand.

Appellant, Jane Ellen Weisman, and Appellee, Michal Paul Weisman, wed in 1968 and separated in 1999.  Appellee filed a complaint in divorce in May of 1999.  The trial court offered the following summary of the pertinent facts and procedural history:

> In 1983, during the marriage, [Appellee] formed the company PRN Healthcare Services ("PRN"), which included two

separate entities to handle skilled nursing through Medicare and unskilled custodial, companion care respectively. PRN was located at 121 Coulter Avenue in Ardmore, Pennsylvania. In 2001, after the parties had separated and initiated divorce proceedings, PRN defaulted on a business loan that has listed the marital residence of the [parties] as collateral. This resulted in the foreclosure sale and loss of the property, which at that point, had been Appellant's residence. [Appellee] later took out a $100,000.00 loan from the Small Business Administration ("SBA Loan") and occasionally loaned personal funds to cover the business costs of PRN.

In 2006, [Appellee], as president and sole shareholder, ceased operations of PRN. Around this time, Harold Hutt [("Hutt")] founded and incorporated [Reliance Home Healthcare, Inc.], a company in the business of unskilled home health care. While the eventual office location of Reliance was recovering from a fire, Reliance initiated business in the same office as PRN. Reliance hired all of PRN's employees, including [Appellee] in the role of administrator, and took on many of PRN's service providers and patients. Shortly thereafter, Reliance moved to 7 East Lancaster Avenue in Ardmore, Pennsylvania. [Appellee] continues to work for Reliance in a part-time capacity.

The convoluted and contentious procedural history of this case began in earnest on September 27, 2006 when Appellant filed a Petition for Special Relief. After several years of amicable support arrangements, this Court granted the petition and the parties reached an agreement on September 20, 2007, requiring [Appellee] to provide Appellant with monthly APL payments of $2,400.00, health insurance, and reimbursement for medical expenses up to $50.00 per month. In response to a petition for bifurcation, this court issued its Order of May 1, 2008, which continued the APL mandated in the prior order 'without reduction, until the final resolution of all equitable distribution, alimony and related issues raised in the divorce action.'

After almost two years of lull in the litigation, Appellant filed a motion for contempt […] alleging that [Appellee] was failing to make adequate payments. In response, [Appellee] filed a motion to modify the existing APL order on September 27, 2010 alleging a change in circumstances in relation to the income of the parties. Subsequently, the Domestic Relations Office ("DRO") held a hearing, and the Support Conference

- 2 -

Officer issued a report finding that [Appellee] had failed to meet his obligations. This report also stated that the APL order of May 1, 2008 was 'not modifiable' on its face. Accordingly, in [an] Order of February 10, 2012, this Court denied [Appellee's] petition to modify the APL order.

For [Appellee's] failure to fulfill his obligations, this Court issued a bench warrant for his arrest on October 11, 2011 and held him in contempt[….] On June 6, 2012, the Support Conference Officer in the DRO again found [Appellee] bound by the original APL order.

The DRO then issued its Master's Report and Recommendation upon Equitable Distribution, Alimony, Counsel Fees, and Costs of October 26, 2012, reporting its assessment of the case at that stage of the litigation. Of note, the report stated '[Appellant] claims that [Appellee] dissipated PRN. However … there is no evidence [Appellee] dissipated this asset. On the contrary, the overwhelming evidence suggests that the business was failing, could not be sold and resulted in the parties being left with significant debt.' The DRO then considered 'the length of marriage and current earnings of the parties' and recommended 'that [Appellee] pay alimony to [Appellant] in the amount of $1,000.00 per month for a period of five years,' noting that the duration of the award would not be modifiable, but the amount would be, 'based upon any change in the parties' income.' Additionally, the report recommended a denial of all claims for counsel fees.

Undeterred, Appellant continued in her quest of discovery. Accordingly, this Court issued orders for discovery on February 1, 2013, requiring documents related to PRN and Reliance; on May 15, 2013, requiring, *inter alia*, testimony from [Appellee] and [Hutt] for three hours and two hours, respectively; on May 24, 2013, requiring additional testimony from [Hutt] and Erica Benning, another PRN and Reliance employee. This Court finally concluded the fact finding of the case with the Order of March 26, 2014, finding no connection between PRN and Reliance. Thus, on April 7, 2014, this Court ordered Appellant to pay attorney's fees for [Appellee] and Reliance.

Trial Court Opinion, 6/27/14, at 1-4.

"We note that our standard in reviewing the propriety of equitable distribution awards is broad: we will not disturb a trial court's determinations absent an abuse of discretion, that is, if the trial court failed to follow proper legal procedures or misapplied the law." **Osial v. Cook**, 803 A.2d 209, 213 (Pa. Super. 2002). "Nor will we usurp the trial court's duty as factfinder." **Id.** "The test in any equity matter is not whether we would have reached the same result on the evidence presented, but whether the judge's conclusions can be reasonably drawn from the evidence." **Id.** The goal of equitable distribution is to "[e]ffectuate economic justice between the parties[.]" 23 Pa.C.S.A. § 3102(a)(6). Section 3502(a) of the Divorce Code sets forth factors relevant to achieving economic justice. 23 Pa.C.S.A. § 3502(a).

Appellant first asserts the trial court erred in finding no connection between PRN and Reliance. Appellant believes Reliance and PRN are not distinct companies, and that Reliance is the continuation of PRN under a different name. As such, Appellant believes Reliance is marital property and she is entitled to a portion of its assets. The trial court has discretion to determine whether an asset is part of the marital estate and therefore subject to equitable distribution. **Fishman v. Fishman**, 805 A.2d 576, 578 (Pa. Super. 2002). The goodwill of a business is a marital asset subject to equitable distribution. **Solomon v. Solomon**, 611 A.2d 686, 691 (Pa. 1992); **Baker v. Baker**, 861 A.2d 298, 303 (Pa. Super. 2004), *appeal*

*denied*, 918 A.2d 741 (Pa. 2007). In ***Gioia v. Gioia***, 555 A.2d 1330, 1334-35 (Pa. Super. 1989), this Court held that a husband's 50% interest in a corporate successor to his former partnership was a marital asset.

Appellant relies on the continuity of the employees, client base, and services rendered by PRN and Reliance. Appellant also notes the business immediately became profitable under Hutt, even though Hutt had no experience in the industry. Such was not possible, according to Appellant, absent the ongoing goodwill of PRN and its employees and caregivers.

On December 12, 2013, Appellee and Hutt testified at a hearing concerning Appellant's exceptions to the master's report and recommendations. Appellee testified that when PRN closed it had no assets, no line of credit, and that its sales income was not sufficient to meet payroll. N.T. Hearing, 12/10/13, at 52-53. State law prohibited PRN from leaving patients without care, so PRN referred them to Reliance, a new company set up by Hutt. *Id.* at 54. Friends Life Care, from which PRN received most of its patient referrals, had a choice of referring PRN's existing patients to Reliance or any other appropriate organization. *Id.* at 53-54. Appellee informed Friends Life Care that PRN was going out of business. Reliance contacted PRN staff and gave them the option of joining Reliance, thus creating continuity of care for the patients. *Id.* at 56. The caregivers were independent contractors who often worked for several companies. *Id.* at 103. Reliance hired Appellee as an administrator, because his experience

allowed Reliance to obtain a license to perform its work. *Id.* at 58. In summary, Appellee testified that PRN was financially insolvent, and that the transfer of most of its patients and staff to Reliance proved the most advantageous way to treat the patients, who received continuity of care from familiar caregivers.

Hutt testified that Reliance received its first patients as referrals from Friends Life Care because PRN was going out of business and the patients were in need of caregivers. *Id.* at 179. Hutt wanted to create a new company with a new name because PRN was known for its skilled care entity, which closed prior to PRN Healthcare Services. *Id.* at 182. In several months during Reliance's first two years of operation, Hutt did not take a paycheck because the company could not afford it. *Id.* at 190-91. Reliance was not profitable in 2007, its first full year of business. *Id.* at 198.

The trial court credited the testimony of Appellee and Hutt and on that basis rejected Appellant's theory that Reliance simply continued the business of PRN under another name. We understand Appellant's concerns, given the substantial overlap of employees and clientele between the two companies. The record supports Appellant's assertions that Reliance maintained the same telephone number as PRN, and that Reliance, at its inception, advertised itself on its website as serving the local community for nearly three decades—the length of time PRN had been in business.

Regardless, our standard of review requires us to affirm the trial court absent an abuse of discretion or misapplication of the law. The trial court afforded Appellant a lengthy opportunity to take discovery in support of her exception to the master's report and recommendation. Despite this, Appellant's appellate argument amounts to an attack on the credibility of Appellee and Hutt. We observe that an expert report on the valuation of PRN—in particular its goodwill or going concern value—would have been useful to the trial court and to this Court in assessing the legitimacy of Appellant's claim. *See Butler v. Butler*, 633 A.2d 148 (Pa. 1995). Appellant did not procure the services of an expert witness. Absent such evidence, we are left with facts, summarized above, indicating that PRN was in debt, went out of business, and that Hutt created Reliance to serve a clientele PRN left behind. We believe the trial court acted within its discretion and did not commit legal error in finding that Reliance is not a marital asset. Appellant's first assertion of error does not merit relief.

Appellant next asserts that, after the parties separated, Appellee received $427,000.00 from PRN in the form of loans repaid to shareholders. Appellant further asserts that Reliance, as successor corporation, is liable for this debt. Appellant argues Reliance assumed the liabilities of its predecessor in this case because Reliance is simply a continuation of PRN. The merit of Appellant's second argument depends entirely on her success in

the first. Since we have rejected Appellant's first assertion of error, the second one necessarily fails.

Appellant's third argument is that the trial court erred in modifying a non-modifiable alimony *pendente lite* ("APL") order. According to Appellant, the parties agreed to the trial court's May 1, 2008 APL order, which required Appellee to pay $2,400.00 per month "without reduction" and provide health care coverage. Order, 5/1/08, at ¶ 1. Statutory law forbids court modification of an APL agreement. 23 Pa.C.S.A. § 3105(c) ("In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding […] alimony pendente lite […] shall not be subject to modification by the court."). Court-awarded APL, on the other hand, is subject to modification if circumstances change. ***Childress v. Bogosian***, 12 A.3d 448, 463 (Pa. Super. 2011).

The record reflects a September 20, 2007 order directing Appellee to provide $2,400.00 in APL, $50.00 per month in unreimbursed medical expenses, and health insurance. Order, 9/20/07, at ¶¶ 1-3. The court entered that order without prejudice to a subsequent petition to modify. ***Id.*** at ¶ 4. The May 1, 2008 order, as noted above, provided for the payments specified in the September 20, 2007 order to continue "without reduction, until the final resolution of all equitable distribution, alimony and related issues raised in the divorce action are resolved by agreement or final order." Order, 5/1/08, at ¶ 1. The May 1, 2008 order also required Appellee to

- 8 -

continue to provide health insurance to Appellant and to obtain insurance on his life with a death benefit to Appellant of $100,000.00. *Id.* at ¶ 2-3. Paragraph 4 provides as follows:

> Upon providing documentation of compliance with paragraphs 2 and 3 above to [Appellant's] counsel, [Appellee] may request entry of an order bifurcating the action in divorce which shall be entered, unless [Appellant] files an objection to same based on non-compliance with paragraphs 2 and 3.

*Id.* at ¶ 4. Appellant asserts Appellee agreed to entry of this order in exchange for Appellant's consent to his petition to bifurcate the divorce proceeding. Appellant's Brief at 36-37. Appellee's Brief is silent on whether he agreed to the order. The conference that preceded entry of the May 1, 2008 order is not of record.

The trial court addressed this issue as follows:

> The parties stipulated on February 21, 2013 that Appellant's health insurance plan was canceled in May of 2011. She obtained a new plan, which was terminated for non-payment of premiums that December. On February 21, 2012, this Court held [Appellee] in contempt and ordered him to pay for the plan to be reinstated. This order further attached his wages to cover the costs. Appellant's health insurance plan was again terminated for non-payment that June, and on July 9, 2013, this Court again held [Appellee] in contempt.
>
> However, on August 8, 2013, this Court reversed the prior order and found that [Appellee] had in fact been providing the money for [Appellant's] premiums, but Appellant had failed to apply these funds to maintain coverage. This order credited [Appellee] with the money that Appellant had failed to apply toward health insurance.

Trial Court Opinion, 6/27/14, at 4. The trial court construed its order as a credit for misapplied funds rather than a modification of the APL order.

To summarize the foregoing, the record contains no direct evidence that the parties agreed to the May 1, 2008 order. The order does not expressly state that it was entered by consent. The order makes the success of Appellee's petition to bifurcate conditional on his compliance with paragraphs 2 (provide health insurance) and 3 (obtain life insurance). The court did not condition the grant of Appellee's bifurcation motion on his compliance with Paragraph 1, which includes the "without reduction" language. Ultimately, we are left to speculate whether the terms of the May 1, 2008 order was the subject of a negotiated agreement or whether it was of the trial court's design. Under these circumstances, we do not believe § 3105(c), governing APL by agreement, is dispositive.

We further conclude the trial court did not violate the express terms of its own order. The court did not devise a reduction to Appellant's APL. Rather, the trial court explained that the effect of its order "was to credit [Appellee] for the payments he made to Appellant for health insurance while she did not have premiums to pay." Trial Court Opinion, 6/27/14, at 15 n.3. In other words, the order required Appellee to provide health insurance in addition to the $2,400.00 per month APL payment. To discharge that obligation, Appellee provided money to Appellant to cover her insurance premiums. Appellee failed to apply the money to the premiums and allowed her coverage to lapse. The trial court therefore devised a way to

compensate Appellee for misapplied funds. We discern no abuse of discretion or error of law. Appellant's third assertion of error fails.

In her fourth argument, Appellant argues the trial court erred in awarding attorney's fees to compensate Appellee for the discovery Appellant conducted in her unsuccessful attempt to establish that Reliance was a continuation of PRN under a new name.

Section 2503 of the Judiciary Code governs awards of counsel fees. 42 Pa.C.S.A. § 2503. A trial court may award fees to a party for an opposing party's "dilatory, obdurate or vexatious conduct during the pendency of any matter." 42 Pa.C.S.A. § 2503(7). Counsel fees are also appropriate where "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S.A. § 2503(9). The trial court also relied on Rule 4019 of the Rules of Civil Procedure. Rule 4019 governs the imposition of sanctions for a party's failure to comply with discovery. Pa.R.C.P. 4019.

Matters of discovery rest within the trial court's discretion. *Octave v. Walker*, 103 A.3d 1255, 1266 (Pa. 2014). Trial courts have broad discretion to craft sanctions for discovery violations. *Id.* The trial court justified its ruling as follows:

> Over the several years of the litigation of this case, this [c]ourt found that Appellant was fishing for facts that were not supported by the evidence. Accordingly, Appellant was ordered to compensate [Appellant and Reliance] for their time spent in discovery.

- 11 -

Trial Court Opinion, 6/27/14, at 13.

We conclude the trial court lacked statutory authority to impose attorney's fees in this case. The trial court did not make any finding that Appellant's conduct was dilatory, obdurate or vexatious, pursuant to § 2503(7). Likewise, the trial court did not note any violation, on Appellant's part, of Rule 4019. Rule 4019 applies principally where the subject of discovery fails to comply with a request from the party seeking discovery. Rather than crafting sanctions to punish abusive behavior, the trial court in this case punished Appellant because her discovery was unsuccessful. As we explained above in connection with Appellant's first argument, we believe Appellant had good reason to examine closely the relationship between PRN and Reliance. Her failure to establish a relationship sufficient to bring Reliance within the marital estate is not, by itself, a sufficient basis for imposing sanctions. Extensive but unsuccessful discovery is by no means synonymous with dilatory, obdurate or vexatious behavior. The trial court abused its discretion in concluding otherwise. We will therefore vacate the April 7, 2014 order directing Appellant to pay counsel fees.

Appellant's fifth argument is that the trial court erred in failing to find husband responsible for spoliation of evidence and violation of various court orders and discovery rules. Appellant cites no law in support of this argument and therefore has waived it. Pa.R.A.P. 2119(b); **_Dalrymple v._**
**_Kilishek_**, 902 A.2d 1275, 1281 (Pa. Super. 2007).

Appellant's sixth assertion of error is that the trial court erred in limiting the depositions of Appellee and Hutt to three hours and two hours, respectively.[1]  As we noted above, trial courts enjoy broad discretion in managing discovery.  *Octave*, 103 A.3d at 1266.  In support of this argument, Appellant reprises the facts set forth in her first argument, whereby she attempted to establish that Reliance is simply the same company as PRN.  She argues that the total of five hours of deposition time was woefully inadequate to examine the witnesses on a very complicated issue.

Our review of the record convinces us that the trial court permitted Appellant to conduct extensive discovery on this issue, in the form of depositions and voluminous requests for document production.  We believe the trial court afforded Appellant more than sufficient opportunity to prove her claims.  We therefore discern no abuse of discretion in the deposition time limitations.

In her penultimate argument, Appellant asserts the trial court erred in awarding insufficient alimony of $367.00 per month for five years.  The Divorce Code provides:  "Where a divorce decree has been entered, the

---

[1]  This section of Appellant's brief also includes no citation to authority, though in an earlier portion of her brief she cited the abuse of discretion standard applicable to discovery matters.  We conclude Appellant did not waive this argument, as the standard of review is dispositive of this argument.

court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S.A. § 3701(a). Section 3701(b) provides seventeen factors for trial courts to consider in fashioning an alimony award. 23 Pa.C.S.A. § 3701(b). We will not reverse an award of alimony absent an abuse of discretion. **Middleton v. Middleton**, 812 A.2d 1241, 1248 (Pa. Super. 2002).

Instantly, the trial court acknowledges an error in calculating Appellee's income. The trial court reduced Appellee's income based on a garnishment for a defaulted SBA loan. Garnishment is not among the exclusive list of approved income reductions set forth in Pa.R.C.P. 1910.16-2(c). In pertinent part, that Rule reads: "Unless otherwise provided in these rules, the court shall deduct **only** the following items from monthly gross income to arrive at net income." Garnishment is not among the items listed. Appellee disputes this point, but fails to provide any legal authority to support his argument. In accord with the trial court's request, we will vacate the alimony award and remand for calculation of a new award.

Appellant's eighth and final argument is that the trial court erred in refusing to award her attorney's fees for Appellee's multiple alleged violations of discovery rules, including delays, spoliation of evidence and incomplete responses. Once again, we note that management of discovery and imposition of sanctions, if necessary, rests within the discretion of the trial court. **Octave**, 103 A.3d at 1266. The trial court found Appellee's

discovery responses adequate, and therefore declined to award counsel fees to Appellant. Appellant, on the other hand, believes Appellee's insufficient responses prevented her from examining thoroughly the circumstances of the closing of PRN and the subsequent opening of Reliance. Our review of the record reveals no abuse of discretion on the part of the trial court. At the December 10, 2013 hearing, Appellant examined Appellee and Hutt extensively based on part on materials obtained from Appellee and Hutt through discovery. The record does not support a conclusion that delayed and incomplete discovery responses hindered Appellant's ability to present her case. Once again, we note our belief that expert review of voluminous and intricate financial information would have been of great assistance to Appellant in preparing her case and to this Court in conducting review.

In summary, we vacate the April 7, 2014 order directing Appellant to pay counsel fees. We also vacate the alimony award set forth in the March 26, 2014 divorce decree and remand for entry of a new alimony award. We affirm the remainder of the March 26, 2014 decree. We affirm the orders of May 15 and August 8, 2013.

Decree affirmed in part and vacated in part. Order of April 7, 2014 vacated. Orders of May 15 and August 8, 2013 affirmed. Case remanded for entry of a new alimony award. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2015