J-A29024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| M.W.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH A. BUZOGANY, M.D., | : | No. 379 WDA 2022 |
| ARMSTRONG-INDIANA BEHAVIORAL | : | |
| AND DEVELOPMENTAL HEALTH | : | |
| PROGRAM, INDIANA REGIONAL | : | |
| MEDICAL CENTER, BARBARA A. | : | |
| MCKEE AS THE ADMINISTRATOR OF | : | |
| THE ESTATE OF DONALD L. MCKEE, | : | |
| ESQUIRE, THE COUNTY OF INDIANA, | : | |
| PA, AMY CLINE, LOUISE KELLER | | |
| BIVENS, MSW, AND SALLY PRUGH | | |

Appeal from the Order Entered March 10, 2022
In the Court of Common Pleas of Indiana County Civil Division at No(s):
12227 CD 2018

| | | |
|---|---|---|
| M.W.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH A. BUZOGANY, M.D., | : | No. 380 WDA 2022 |
| ARMSTRONG-INDIANA BEHAVIORAL | : | |
| AND DEVELOPMENTAL HEALTH | : | |
| PROGRAM, INDIANA REGIONAL | : | |
| MEDICAL CENTER, BARBARA A. | : | |
| MCKEE AS THE ADMINISTRATOR OF | : | |
| THE ESTATE OF DONALD L. MCKEE, | : | |
| ESQUIRE, THE COUNTY OF INDIANA, | : | |
| PA, AMY CLINE, LOUISE KELLER | : | |
| BIVENS, MSW, AND SALLY PRUGH | : | |

J-A29024-22

Appeal from the Order Entered March 10, 2022
In the Court of Common Pleas of Indiana County Civil Division at No(s):
12227 CD 2018

BEFORE:  BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED:  July 21, 2023**

In this consolidated appeal, Appellant, M.W.M., appeals from two March

10, 2022 orders entered in the Court of Common Pleas of Indiana County that

granted, in part, two motions to compel specific responses to interrogatories,

as well as the production of Appellant's medical, mental health, and substance

abuse treatment records.  One of the orders granted a motion to compel filed

by Joseph A. Buzogany, M.D. ("Dr. Buzogany"), and the other granted a

motion to compel filed jointly by Donald L. McKee, Esquire ("Attorney McKee")

and the County of Indiana, Pennsylvania ("Indiana County").[1]  We affirm the

_____

[1] The appeal docketed in this Court at 379 WDA 2022 involves Appellant's
appeal from the March 10, 2022 order granting, in part, the motion to compel
specific responses and the production of documents filed by Dr. Buzogany, as
discussed in greater detail *infra* (referred to as "Trial Court Order
(Buzogany)").  The appeal docketed in this Court at 380 WDA 2022 involves
Appellant's appeal from a separate March 10, 2022 order granting, in part,
the motion to compel specific responses and the production of documents filed
by Attorney McKee and Indiana County, as discussed in greater detail *infra*
(referred to as "Trial Court Order (McKee)").  In a May 22, 2022 *per curiam*
order, this Court, *sua sponte*, consolidated the two appeals.

During the events giving rise to Appellant's causes of action, Attorney McKee
worked with the Public Defender's Office of Indiana County and represented
Appellant at a mental health commitment hearing, as discussed more fully
*infra*.  Attorney McKee is now deceased, and his interests are represented by
Barbara A. McKee, as the Administrator of the Estate of Donald L. McKee.  **See**
Trial Court Order, 12/24/20.  The caption of the appeal docketed at 379 WDA

- 2 -

March 10, 2022 orders but remand this case for further proceedings in accordance with this memorandum.[2]

The trial court summarized the factual history as follows:

This case involves an incident that occurred on December 20, 2016. The Pennsylvania State Police received a [telephone] call indicating that [Appellant] was contemplating suicide. This report led to an altercation between [Appellant] and the Pennsylvania State Police[. Appellant] was tased during the incident. It was

_____

2022 reflected this development, and we have corrected the caption in the appeal filed at 380 WDA 2022 accordingly. For ease of identification, we refer to Barbara A. McKee as Administrator of the Estate of Donald L. McKee simply as "Attorney McKee."

Armstrong-Indiana Behavioral and Developmental Health Program ("BDHP"), Indiana Regional Medical Center ("IRMC"), Amy Cline ("Cline"), Louise Keller Bivens, MSW ("Bivens"), and Sally Prugh ("Prugh") did not participate in the consolidated appeals, as they were not parties to any effort to compel more specific discovery responses and demand the production of mental health records. Moreover, we have corrected the captions of the consolidated appeals to reflect the fact that the trial court struck the Public Defender's Office of Indiana County as a party from this litigation. *See* Trial Court Order, 5/27/20.

[2] On August 1, 2022, Attorney McKee and Indiana County filed a supplemental reproduced record with this Court that contained excerpts from Appellant's wife's deposition. Supplemental Reproduced Record, 8/1/22, at 29-33. On August 2, 2022, Appellant filed, with this Court, a motion to strike that portion of the supplemental reproduced record filed by Attorney McKee and Indiana County. Attorney McKee and Indiana County filed a response to Appellant's motion to strike with this Court on August 8, 2022.

It is well-established that, "for purposes of appellate review, what is not in the certified record does not exist." ***Ruspi v. Glatz***, 69 A.3d 680, 691 (Pa. Super. 2013), *appeal denied*, 81 A.3d 78 (Pa. 2013). A review of the certified record in the case *sub judice* demonstrates that Appellant's wife's deposition is not part of the record. As such, we grant Appellant's motion to strike the excerpts of his wife's deposition that are contained within the supplemental reproduced record submitted by Attorney McKee and Indiana County.

later determined that [Appellant] was under the influence of prescribed medication and alcohol during this altercation. [Appellant] was taken into custody and transported to IRMC. While at IRMC, [Appellant's] wife executed the documents necessary to have [Appellant] involuntarily committed under 50 P.S. [§ ]7302[ (relating to the involuntary emergency examination and treatment authorized by a physician to determine whether the person is severely mentally disabled and in need of immediate mental health treatment).[3] Appellant] was

_____

[3] Section 7302 of the Mental Health Procedures Act, 50 P.S. §§ 7101 - 7503 ("MHPA"), states, in pertinent part, as follows:

### § 7302. Involuntary emergency examination and treatment authorized by a physician - Not to exceed one hundred twenty hours

**(a) Application for Examination.** - Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

**(1) Warrant for Emergency Examination.** - Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

**(2) Emergency Examination Without a Warrant.** - Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written

evaluated by [Dr.] Buzogany and a [commitment] hearing under 50 P.S. [§ ]7303[ (relating to the extended involuntary emergency mental health treatment certified by a judge or mental health review officer)[4]] was held.

---

statement setting forth the grounds for believing the person to be in need of such examination.

**(b) Examination and Determination of Need for Emergency Treatment.** - A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of [50 P.S. § 7301(b)(1)] and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

50 P.S. § 7302(a) and (b).

[4] Section 7303 of the MHPA states, in pertinent part, as follows:

**§ 7303. Extended involuntary emergency treatment certified by a judge or mental health review officer - Not to exceed twenty days**

**(a) Persons Subject to Extended Involuntary Emergency Treatment.** - Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to [50 P.S. § 7302] whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application

Trial Court Order (Buzogany), 3/10/22, at ¶1; *see also* Trial Court Order (McKee), 3/10/22, at ¶1. Upon conclusion of the December 22, 2016 commitment hearing, a mental health review officer authorized Appellant's extended commitment pursuant to Section 7303 of the MHPA.

Sometime thereafter, Appellant filed a petition for review of the certification for his involuntary emergency examination and treatment ("petition for review"). Appellant's petition for review was docketed at trial court docket number 12250 CD 2016. On December 27, 2018, the trial court granted Appellant's petition for review, finding that the warrant for Appellant's emergency examination was not properly issued and that Appellant's due process rights, as they pertain to the involuntary commitment process under the MPHA, were violated. Trial Court Opinion and Order (12250 CD 2016), 12/27/18, at 8, 12. In granting Appellant's petition for review, the trial court vacated Appellant involuntary commitment under Section 7303 and expunged Appellant's records of involuntary commitment under Section 7302 and Section 7303.[5] *Id.*

---

shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.

50 P.S. § 7303(a).

[5] The trial court's opinion and order, expunging Appellant's Section 7302 and Section 7303 commitment record, was made part of the certified record in the case *sub judice* as an attachment to Appellant's motion to determine the necessity to file a certificate of merit as to, *inter alia*, Dr. Buzogany.

Appellant subsequently filed a legal action against Dr. Buzogany, Attorney McKee, Indiana County, BDHP, IRMC, Cline, Bivens, and Prugh alleging they violated his due process rights and, as to certain defendants, committed professional malpractice during the intake process in December 2016. On December 12, 2019, Appellant filed a third amended complaint, asserting the following causes of action: Count I - violations of his constitutional rights under the Fourth and Fourteenth Amendments; Count II - violations of his procedural due process rights; Count III - violations of his substantive due process rights; Count IV – gross negligence and willful misconduct under Section 7114(a) of the MHPA;[6] Count V – legal malpractice; and Count VI – professional malpractice.[7] Third Amended Complaint,

_____

[6] Section 7114(a) of the MHPA states,

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a).

[7] In the third amended complaint, Counts I, II, and III involved Indiana County, Dr. Buzogany, Attorney McKee, BDHP, Cline, IRMC, Prugh, and Bivens; Count IV involved Indiana County, BDHP, and Cline; Count V involved

- 7 -

12/12/19, at ¶¶116 – 252. After discovery commenced, Attorney McKee and Indiana County filed a motion to compel Appellant to fully respond to questions 1 and 2 of their first request for production of documents ("Attorney McKee and Indiana County's motion to compel").[8] **See** Attorney McKee and Indiana County's Motion to Compel, 9/25/20, at ¶3. In their motion to compel, Attorney McKee and Indiana County asserted, *inter alia*, that Appellant impliedly waived any confidentiality privilege by placing his mental health at issue in the pending litigation. **Id.** at ¶13. On October 13, 2020, Appellant filed a reply and a brief in opposition to Attorney McKee and Indiana County's motion to compel.

On November 18, 2020, Dr. Buzogany filed a motion to compel more specific responses to his interrogatories, numbered 6 through 9, and to his request for production of documents, numbered 3, contained within his first set of interrogatories and requests for production of documents ("Dr. Buzogany's motion to compel").[9] In his motion to compel, Dr. Buzogany

_____

Indiana County and Attorney McKee; and Count VI involved Dr. Buzogany, IRMC, and Bivens. Third Amended Complaint, 12/12/19, at ¶¶116 – 252.

[8] Attorney McKee and Indiana County's motion to compel "relates to said [parties'] efforts, through discovery, to obtain records and information relating to [Appellant's] history of medical and mental health treatment from January 1, 2013, to December 19, 2016[, with s]pecific emphasis [] placed upon records from September 2016." Trial Court Order (McKee), 3/10/22, at ¶4.

[9] Dr. Buzogany's motion to compel "relates to [Dr.] Buzogany's efforts, through discovery, to obtain records and information relating to [Appellant's] history of medical and mental health treatment, as well as any substance

asserted that Appellant impliedly waived any confidentiality privilege to his mental health records by placing his mental health history directly at issue in the current litigation. Dr. Buzogany's Motion to Compel, 11/18/20, at ¶¶21, 25-26. Appellant filed a response to Dr. Buzogany's motion to compel on January 25, 2021.

On March 10, 2022, the trial court granted, in part, Dr. Buzogany's motion to compel. Trial Court Order (Buzogany), 3/10/22, at 6. Specifically, the trial court ordered disclosure of all "records and information relating to [Appellant's] history of medical and mental health treatment, as well as any substance abuse treatment, for the five-year period from December 20, 2011, to December 19, 2016." *Id.* (stating, "[t]o the extent [Dr. Buzogany's motion to compel] requests additional responses, said [m]otion is [denied]"). That same day, the trial court granted, in part, Attorney McKee and Indiana County's motion to compel. Trial Court Order (McKee), 3/10/22, at 6. Specifically, the trial court ordered responses to "all discovery requests seeking records and information relating to [Appellant's] history of medical and mental health treatment, as well as any substance abuse treatment, for the period from January 1, 2013, to December 19, 2016." *Id.* (stating, "[t]o the extent [Attorney McKee and Indiana County's motion to compel] requests

---

abuse treatment, for the ten-year period preceding the treatment identified in the third amended complaint." Trial Court Order (Buzogany), 3/10/22, at ¶4 (extraneous capitalization omitted).

additional responses, said [m]otion is [denied]"). As part of both March 10, 2022 orders, the trial court directed that all records produced in response to Dr. Buzogany's and Attorney McKee and Indiana County's requests be summitted to the trial court for *in-camera* review. The trial court further stated that, upon review of the submitted records, the trial court "shall exclude all records, the discovery of which is contrary to the findings of" the March 10, 2022 orders. Trial Court Order (Buzogany), 3/10/22, at 6; **see also** Trial Court Order (McKee), 3/10/22, at 6. This appeal followed.[10]

Appellant raises the following issues for our review:

1. Did the [trial] court commit an error of law and set a dangerously broad new precedent by deciding that when a plaintiff challenges the denial of his due process and statutory rights during the involuntary commitment process, mental health records from beyond the 30-day statutory window are relevant to whether a person was a danger to himself or whether [a] defendant[] violated plaintiff[']s rights during the commitment process?

2. Did the [trial] court misapply **Octave**[ **v. Walker**, 103 A.3d 1255 (Pa. 2014)] and set a dangerously broad new precedent by deciding that [] anyone who asserts a claim that [his or her] rights were violated during the involuntary commitment process has necessarily and impliedly waived confidentiality and privilege as to 5-years' worth of mental health, psychiatric, medical, and substance abuse treatment records?

---

[10] Both Appellant and the trial court complied with Pa.R.A.P. 1925. On April 18, 2022, the trial court filed its Rule 1925(a) opinion, stating it relied upon the opinions that accompanied the March 10, 2022 orders. Trial Court Opinion, 4/18/22.

3.    Did the [trial] court abuse its discretion by ignoring that there were less intrusive means by which [Dr. Buzogany, Attorney McKee, and Indiana County] could obtain information they sought and by refusing to require continuing confidentiality?

Appellant's Brief at 4 (extraneous capitalization omitted).[11]

---

[11] Appellant appeals from two orders overruling his claims of evidentiary privilege to his medical, mental health, and substance abuse treatment records and requiring disclosure of this information. These two orders are immediately appealable as collateral orders pursuant to Pennsylvania Rule of Appellate Procedure 313(b). **See** Pa.R.A.P. 313(b) (stating, "[a] collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"); **see also Commonwealth v. Harris**, 32 A.3d 243, 251 (Pa. 2011) (stating, "orders overruling claims of privilege and requiring disclosure are immediately appealable under [Rule 313(b)]").

We are cognizant that Indiana County, a political subdivision of this Commonwealth, is a defendant-party in Appellant's underlying cause of action. As such, we must preliminarily examine whether this Court has jurisdiction over the instant matter, or if the case should be transferred to the Commonwealth Court. **See Smith v. Ivy Lee Real Estate, LLC**, 152 A.3d 1062, 1065 (Pa. Super. 2016) (stating, "this Court may, *sua sponte*, raise the issue of whether an appeal should be transferred to the Commonwealth Court").

"Chapter Seven of the Judicial Code sets forth the legislatively ordained division of labor between appellate courts in Pennsylvania." **Mohn v. Bucks County Republican Comm.**, 218 A.3d 927, 930 (Pa. Super. 2019) (citation and original quotation marks omitted); **see also** 42 Pa.C.S.A. §§ 702 - 764. Section 742 of the Judicial Code states, "[this Court] shall have exclusive appellate jurisdiction of all appeals **from final orders** of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of [our] Supreme Court or the Commonwealth Court." 42 Pa.C.S.A. § 742 (emphasis added). Section 762 of the Judicial Code, in pertinent part, states,

**§ 762. Appeals from courts of common pleas**

_____

**(a) General rule.** - Except as provided in subsection (b) [(relating to appeals from court of common pleas cases within the exclusive jurisdiction of our Supreme Court)], the Commonwealth Court shall have exclusive jurisdiction of appeals **from final orders** of the courts of common pleas in the following cases:

. . .

(4) Local government civil and criminal matters. –

(i) All actions or proceedings arising under any municipality, institution district, public school, planning or zoning code or under which a municipality or other political subdivision or municipality authority may be formed or incorporated or where is drawn in question the application, interpretation or enforcement of any:

(A) statute regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations or of the officers, employees or agents thereof, acting in their official capacity;

. . .

(7) Immunity waiver matters. - Matters conducted pursuant to Subchapter C of Chapter 85 (relating to actions against local parties).

42 Pa.C.S.A. § 762(a)(4)(i)(A) and (7) (emphasis added).

Thus, pursuant to our statutory scheme, appeals **from final orders** of the court of common pleas involving statutes regulating the affairs or general operations of counties or potential immunity defenses available to counties fall within the exclusive jurisdiction of the Commonwealth Court. ***Id.***; ***see also Wheatcroft v. Auritt***, 312 A.2d 441, 446 (Pa. Super. 1973) (defining "affairs of political subdivisions" to mean the "business" or "general operations" of the political subdivision); 42 Pa.C.S.A. §§ 8541 - 8564 (pertaining to matters affecting government units – actions against local parties); 42 Pa.C.S.A. § 8501 (defining "local party" or "local agency" as "[a]

- 12 -

government unit other than the Commonwealth government"); 42 Pa.C.S.A. § 102 (defining "government unit" as including "any political subdivision").

We acknowledge that this Court, in an *en banc* decision, held that appeals from **final orders** of the court of common pleas **involving substantive matters enumerated in Section 762** are within the exclusive jurisdiction of the Commonwealth Court, and such appeals, if filed with this Court or transferred to this Court, must be transferred to the Commonwealth Court for disposition. ***Mohn***, ***supra***. Our decision in ***Mohn***, however, is distinguishable from the case *sub judice* in that the orders on appeal in the instant case are collateral orders involving evidentiary privileges afforded by the MHPA and the Pennsylvania Drug and Alcohol Abuse Control Act, 71 P.S. §§ 1690.101 - 1690.115, ("DAA"), as discussed more fully *infra*. These two orders are not final orders involving substantive issues concerning one of the seven subject matters enumerated in Section 762(a). Therefore, because the appeal in the case *sub judice* has been perfected and the defendant-parties do not contest this Court's jurisdiction, we find, under these circumstances, that this Court has discretion to retain jurisdiction or to transfer this case to the Commonwealth Court. ***See Trumbull Corp. v. Boss Constr., Inc.***, 747 A.2d 395, 398-399 (Pa. Super. 2000); ***see also*** 42 Pa.C.S.A. § 704(a) (stating, "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this title, or of any general rule adopted pursuant to section 503 (relating to reassignment of matters), vesting jurisdiction of such appeal in another appellate court"); 42 Pa.C.S.A. § 741(a) (stating, "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court").

> In determining whether to retain jurisdiction or transfer an appeal, we balance the interests of the parties and matters of judicial economy against other factors, including: (1) whether the case has already been transferred; (2) whether retaining jurisdiction will disrupt the legislatively ordained division of labor between the intermediate appellate courts; and (3) whether there is a possibility of establishing two conflicting lines of authority on a

particular subject. We examine each potential transfer on a case-by-case basis.

*Smith*, 152 A.3d at 1065 (citations and quotation marks omitted); *see also Trumbull*, 747 A.2d at 399; *Mohn*, 218 A.3d at 934.

In the case *sub judice*, Appellant asserts that this Court has jurisdiction pursuant to 42 Pa.C.S.A. § 742 (*see* Appellant's Brief at 1), and the defendant-parties did not object to this Court having jurisdiction over the matter. Although Indiana County, at its request, was excused from oral argument concerning Appellant's appeal, the parties involved in the instant appeal filed appellate briefs in this matter (Indiana County filed an appellee's brief, jointly with Attorney McKee). The issues on appeal, as discussed in greater detail *infra*, surround the evidentiary protections afforded by the MHPA and DAA. Our research reveals that issues involving the evidentiary protections afforded by the MHPA and the DAA have been almost exclusively reviewed by this Court. *See e.g.*, *Commonwealth v. Nuzzo*, 284 A.3d 1243 (Pa. Super. 2022); *see also Gates v. Gates*, 967 A.2d 1024 (Pa. Super. 2009); *T.M. v. Elwyn, Inc.*, 950 A.2d 1050 (Pa. Super. 2008); *but see Johnsonbaugh v. Dept. of Public Welfare*, 665 A.2d 20 (Pa. Commw. Ct. 1995).

After much consideration, we decline to transfer this case to the Commonwealth Court. *Smith*, 152 A.3d at 1065; *see also Trumbull*, 747 A.2d at 399. The interests of judicial economy, as well as the interests of the parties, are best served by this Court retaining jurisdiction of this appeal. Furthermore, our disposition herein will not disrupt the division of labor between this Court and the Commonwealth Court, nor will it result in conflicting lines of authority. *Smith*, 152 A.3d at 1065. Moreover, the issues to be resolved in the instant appeal do not involve substantive matters enumerated in Section 762. We advise the parties, however, that if Indiana County remains a defendant-party, the ultimate resolution of this matter is likely to involve, *inter alia*, an analysis and interpretation of statutes regulating the general operations of Indiana County's mental health treatment programs and facilities (*see generally* 50 P.S. §§ 4301 - 4305), as well as its office of public defender (*see generally* 16 P.S. §§ 9960.1 - 9960.13), and statutes governing any possible immunity defenses afforded to Indiana County (*see e.g.* 50 P.S. § 9114; *see also* 50 P.S. § 4603). As such, an appeal of a final order in the case *sub judice* would properly lie with the Commonwealth Court pursuant to Section 762. 42 Pa.C.S.A. § 762(a)(4)(i)(A) and (7).

Appellant's issues, *in toto*, challenge the trial court's orders that compelled more complete responses and more expansive production of documents related to his medical, mental health, and substance abuse treatment records as part of the discovery proceedings in the pending action.[12] *Id.* at 24-47. Appellant asserts that his mental health and substance abuse treatment records are protected by Section 7111 of the MHPA[13] and Section

---

[12] Appellant concedes that the defendant-parties are entitled to receive copies of his medical, mental health, and substance abuse treatment records generated during the 30-day period prior to December 20, 2016. Appellant's Brief at 10, 27. As such, Appellant's appeal is limited to a challenge of the production of medical, mental health, and substance abuse treatment records generated prior to the 30-day period leading up to December 20, 2016.

[13] Section 7111 of the MHPA states as follows:

### § 7111. Confidentiality of records

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to [50 P.S. § 7110];

(3) a court in the course of legal proceedings authorized by this act;

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency; and

(5) a covered entity or a covered entity's business associate that makes the use, disclosure or request for disclosure in accordance

1690.108 of the DAA, which relates to the confidentiality of drug and alcohol

treatment records.[14]  Appellant's Brief at 34.

_____

> with [45 C.F.R. §§ 164.500 – 164.534] (relating to privacy of individually identifiable health information).
>
> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent.  This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator[,] or the facility so long as the use and dissemination of such data does not identify individual patients. Nothing herein shall be construed to conflict with [Section 1690.108 of the Pennsylvania Drug and Alcohol Abuse Control Act, 71 P.S. 1690.108.]
>
> (b) This section shall not restrict judges of the courts of common pleas, mental health review officers[,] and county mental health and mental retardation administrators from disclosing information to the Pennsylvania State Police or the Pennsylvania State Police from disclosing information to any person, in accordance with the provisions of 18 Pa.C.S.[A.] § 6105(c)(4) (relating to persons not to possess, use, manufacture, control, sell[,] or transfer firearms).

50 P.S. § 7111.

[14] Section 1690.108 of the DAA, in pertinent part, states that "patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation[,] or drug treatment center[,]" except patient records of a federally assisted program, "shall remain confidential and may not be disclosed without a patient's consent" and shall only be disclosed, upon consent, to:

> (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient;
>
> (ii) to the parent or legal guardian of a minor or any other designee for which the patient has provided consent;

- 16 -

Generally, our standard of review for discovery orders is as follows:

> In reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary[,] or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias[,] or ill-will.

***Carlino East Brandywine, L.P. v. Brandywine Village Assoc.***, 260 A.3d 179, 195-196 (Pa. Super. 2021) (citations, quotation marks, and original brackets omitted).  When a challenge to a discovery order involves statutory interpretation, however, we address the issue presented as a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***Octave***, 103 A.3d at 1259; ***see also Nuzzo***, 284 A.3d at 1252.

Pennsylvania Rule of Civil Procedure 4003.1 sets forth a general threshold for discovery of documents and information, in pertinent part, as follows:

**Rule 4003.1.  Scope of Discovery Generally.  Opinions and Contentions**

---

(iii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence; or

(iv) to a covered entity or a covered entity's business associate that makes the use, disclosure[,] or request for disclosure in accordance with [45 C.F.R. §§ 164.500 – 164.534 (relating to privacy of individually identifiable health care information reported to health care clearinghouses)].

71 P.S. § 1690.108(c).

(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition[,] and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Pa.R.Civ.P. 4003.1; *see also Cooper v. Schoffstall*, 905 A.2d 482, 522 (Pa. 2006) (stating that, generally, a document or information is discoverable if that document or information is "reasonably calculated to lead to the discovery of admissible evidence"). In addition to the requirement that the document or information be reasonably calculated to lead to the discovery of admissible evidence, the document or information must not be subject to an evidentiary privilege. Pa.R.Civ.P. 4003.1 (a).

Evidentiary privileges, such as the protections cited by Appellant and afforded by the MHPA and the DAA, have been viewed by appellate courts "to be in derogation of the search for truth and are generally disfavored for this reason." *Octave*, 103 A.3d at 1262. Therefore, such evidentiary privileges are to be strictly construed. *Id.*; *see also Nuzzo*, 284 A.3d at 1252.

The confidentiality of patient records is the *sine qua non* of effective treatment because it encourages patients "to offer information about themselves freely and without suffering from fear of disclosure of one's most

intimate expressions to others and the mistrust that the possibility of disclosure would engender." *Octave*, 103 A.3d at 1260, *see also Zane v. Friends Hosp.*, 836 A.2d 25, 33 (Pa. 2003); *Nuzzo*, 284 A.3d at 1250. Absent an express waiver of confidentiality, *i.e.* a signed waiver,[15] a finding of implied waiver pertaining to treatment records is disfavored and has been recognized by Pennsylvania courts in only one, limited circumstance – where a plaintiff initiates a civil action and seeks to use a confidentiality privilege, such as Section 7111 of the MHPA, to shield disclosure of treatment records that the plaintiff could reasonably have foreseen would be placed directly at issue by the cause of action. *Octave*, 103 A.3d at 1262; *see also Kraus v. Taylor*, 710 A.2d 1142, 1144-1145 (Pa. Super. 1998) (finding, the confidentiality privileges afforded by the MHPA and DAA were waived when the plaintiff filed a personal injury lawsuit seeking damages for permanent injury which placed his life expectancy at issue in the case), *appeal dismissed as improvidently granted*, 743 A.2d 451 (Pa. 2000); *Compare with Gallo v. Conemaugh Health Sys., Inc.*, 114 A.3d 855, 862-863 (Pa. Super. 2015)

---

[15] When a confidentiality privilege has been waived, whether by express or implied waiver, the purpose for which it has been waived is determinative of the scope of that waiver. *In re Fortieth Statewide Investigating Grand Jury*, 220 A.3d 558, 568 (Pa. 2019) (stating, "the fact that a privilege has been narrowly waived for a discrete purpose counsels against construing it as a general waiver for all unrelated purposes"). For example, an express waiver of confidentiality for purpose of obtaining insurance coverage for treatment does not constitute a general waiver but, rather, limits the disclosure to only that information necessary to obtain insurance coverage and to only necessary parties who must maintain the confidentiality of the information themselves.

(finding, the confidentiality of a defendant's mental health records remained protected because the defendant did not bring the lawsuit placing his mental health at issue); *see also Fortieth Statewide Investigating Grand Jury*, 220 A.3d at 568 (declining to extend the holding announced in *Octave*, concerning implied waiver, to a factual scenario where an individual, who executed an express waiver form authorizing disclosure of treatment records to certain parties but could not anticipate public disclosure, did not initiate the grand jury proceedings into which he was drawn).

In *Octave*, *supra*, our Supreme Court explained that confidentiality privileges are not absolute and the "privilege conferred must be balanced against the countervailing interests in ensuring the fairness and integrity of the judicial system." *Octave*, 103 A.3d at 1261. The *Octave* Court held that "a patient waives his[, or her,] confidentiality protections under the MHPA where, judged by an objective standard, he[, or she,] knew or reasonably should have known his[, or her,] mental health would be placed directly at issue by filing [a] lawsuit." *Id.* at 1262.

*Octave* involved an individual (Octave) who was struck by a vehicle. *Id.* at 1256. Although Octave survived the incident, he later died as a result of the injuries sustained. *Id.* at 1256 n.2. Octave's wife filed a negligence suit to recover for physical injuries incurred by her husband. *Id.* at 1256. "[B]ased upon eyewitness reports, the [Pennsylvania] state police concluded that [Octave] attempted to commit suicide by jumping under the [vehicle's] trailer." *Id.* The defendant-driver asserted, as a defense, that Octave

"intentionally caused his own injuries by throwing himself under the [vehicle] in an unsuccessful suicide attempt." *Id.* at 1257.

Applying an objective standard, the *Octave* Court determined that Octave's wife "knew that by commencing suit and alleging [her husband's] physical injuries were caused by [the defendant's] negligence," she placed her husband's "mental health directly at issue as to causation" because there was objective evidence that suggested her husband attempted to commit suicide by jumping under the vehicle's trailer. *Id.* at 1262-1263 and n.11. In balancing the competing interest of ensuring a robust search for truth in the adversarial process against the importance of maintaining confidentiality privileges, the *Octave* Court found that the objective standard for finding implied waiver of a confidentiality privilege was "met[, in that specific instance,] solely because the state police issued a report, based on disinterested eyewitness interviews, finding [Octave] attempted to commit suicide by jumping under the [vehicle's] trailer." *Id.* at 1261, 1263. In so holding, the *Octave* Court reasoned that allowing a plaintiff "to pursue a negligence action while hiding behind a [confidentiality] privilege claim - essentially wielding the legislature's intended shield as a sword - would offend the most basic understanding of fairness and justice" under the specific circumstances of that case. *Id.* at 1263. The *Octave* Court further noted that there were no less-intrusive methods to obtain Octave's mental health records other than disclosure of the mental health records because Octave was now deceased. *Id.* at 1263 n.10 (noting that a

psychological evaluation or interrogatories were not available as less-intrusive means because Octave was deceased). In finding implied waiver of the confidentiality privilege under the case-specific facts, the **Octave** Court urged "courts to use **great caution** in accepting this form of [implied] waiver." **Id.** at 1262 n.8, 1263 (emphasis added) (stating, "[a]llowing a defendant to initiate a fishing expedition into a plaintiff's mental health records to explore whether any information may be potentially relevant or contradictory to the subject of the action would destroy the purpose of the" confidentiality protections").

In the case *sub judice*, we consider whether Appellant, by filing his third amended complaint, impliedly waived the confidentiality privileges afforded to him pursuant to the MHPA and the DAA, as set forth *supra*. For the following reasons, we find that Appellant's filing of his third amended complaint constituted a limited waiver of the confidentiality privileges afforded to him by the MHPA and the DAA pursuant to **Octave** and its progeny.[16]

Before examining the allegations contained in Appellant's third amended complaint, it is necessary to first review the trial court's findings and rulings in Appellant's expungement proceeding related to his involuntary

---

[16] Although we treat the confidentiality privileges afforded by the MHPA and the DAA *in tandem* for purpose of our discussion, we are cognizant that an individual's dependence on drugs or alcohol does not constitute a mental illness under the MHPA. **See** 50 P.S. § 7102 (stating that, mental retardation, senility, or alcohol or drug dependence shall not, of themselves, be deemed to constitute mental illness).

commitments. In the expungement action, Appellant challenged "his involuntary commitments under [Section 7302 and Section 7303 of the MHPA]." Trial Court Opinion and Order (12250 CD 2016), 12/27/18, at 8, 10-12. "[Appellant argued] that his [Section 7303] commitment violated his due process rights because he was denied legal counsel of his choice, forced to proceed with a court-appointed public defender, and was denied the opportunity to obtain a continuance [of the Section 7303 commitment hearing]." *Id.* at 5. The trial court, in addressing Appellant's Section 7303 commitment stated,

> Here, the limited record available shows that [Appellant] desired to have private representation, which he expressed multiple times. Not only was he provided with an extremely minimal amount of time to secure private counsel, he was only able to briefly meet with his [court-appointed] counsel immediately before the [commitment] hearing took place. [Appellant] testified that his counsel did not prepare a defense and did not respond to his inquires about a voluntary [] commitment, seek a continuance, or request a review of the certification. There is no evidence that counsel asked questions or objected to erroneous information presented at the hearing. Furthermore, [Appellant] was restricted from use of the telephone and had no opportunity to attempt to retain private counsel to request a review of the certification. For these reasons, the [trial c]ourt finds that [Appellant] was denied the right to effective representation.

*Id.* at 7-8. The trial court also found that Section "7303(b)(2) requires a record of the proceedings to be kept. While this need not be a stenographic record, some record is required, and the absence of a record of [Appellant's] hearing violated this requirement." *Id.* at 8. The trial court, upon "finding that [Appellant's] due process rights under the MHPA were violated," vacated

Appellant's involuntary commitment under Section 7303 and expunged all records pertaining to that commitment. *Id.* This record makes clear that the trial court expunged Appellant's December 2016 involuntary commitment due to various procedural deficiencies that occurred during the commitment process. The trial court, however, did not address the underlying substantive merit of Appellant's Section 7303 commitment.

Regarding Appellant's Section 7302 commitment, the trial court found that "[t]he boxes on the [Section 7302] application [for involuntary commitment] were checked to indicate that [Appellant] fit the criteria as described in [Section] 7301(b)(1) [(relating to harm to others)] and [Section] 7301(b)(2)(ii) [(relating to harm to self by attempting suicide).]" *Id.* at 11. The Section 7302 application was then used to obtain a warrant for the emergency examination of Appellant pursuant to Section 7302 (a)(1). *Id.*; *see also* 50 P.S. § 7302. The trial court, upon review, held that,

> Based on the contents of the application that [was] used to secure the warrant, the [trial c]ourt can find no basis for [the warrant's] issuance under [Section] 7301(b)(1), as the application does not reference any threats to others by [Appellant]. Furthermore, the [trial c]ourt does not find that the statements relating to [Appellant's] threats of harm to himself satisfy the requirements for issuance of a warrant under [Section] 7301(b)(2)(ii). While [Appellant] may have made comments in the past about killing himself, particularly when intoxicated, these general threats were not alleged to have occurred within the 30 days prior to [the completion of the Section 7302 application.]

Trial Court Opinion and Order (12250 CD 2016), 12/27/18, at 11. After concluding that the warrant for Appellant's emergency examination was

improperly issued in violation of Appellant's due process rights, the trial court expunged Appellant's Section 7302 commitment records. ***Id.*** at 12. In granting Appellant's request for the expungement of his Section 7302 and Section 7303 commitment records, the trial court expressly found it unnecessary to "examine the evidentiary sufficiency of the resulting commitment." ***Id.***

With an understanding of Appellant's prior expungement action, we turn to a review of his third amended complaint. In the case *sub judice*, Appellant argues that his causes of action, as set forth in his third amended complaint, stem exclusively from the alleged procedural violations surrounding his Section 7302 and Section 7303 commitments and do not involve an examination of, or litigation surrounding, the substantive merit of his Section 7302 and Section 7303 commitments.[17] An examination of Appellant's third amended complaint, however, reveals assertions that challenge both the procedural **and** substantive merits of his Section 7302 and Section 7303 commitments. By way of example, the third amended complaint contains the following allegations:

> At no time during this period was [Appellant] severely mentally disabled, as defined by law, nor did [Appellant] pose a clear and present danger to himself or others.

---

[17] Appellant argues that "whether [he] should have been . . . involuntarily committed has no bearing on whether [his due process] rights were violated during the commitment process[.]" Appellant's Brief at 26 (emphasis omitted).

Instead, the [Section 7303] commitment was improperly used to force [Appellant] into treatment for his alcohol use [and] for the convenience of the [defendant-parties] and their holiday and vacation plans.

Third Amended Complaint, 12/12/19, at ¶¶104 and 105 ("Facts of Case").[18]

As a proximate result of [defendant-parties' (IRMC, BDHP, and Cline)] gross negligence and willful misconduct [Appellant] was held against his will and [deprived of] his rights [] for several days.

*Id.* at ¶217 (Count IV – gross negligence claim).

As a result of [Attorney McKee's] gross negligence and failure to adhere to professional standards, [Appellant] was held against his will for several days.

*Id.* at ¶225 (Count V – legal malpractice).

As a proximate result of IRMC, Bivens, and Dr. Buzogany's professional and gross negligence and failure to adhere to professional standards and the MHPA, [Appellant] was held against his will for several days.

*Id.* at ¶251 (Count VI – professional malpractice).

In claiming entitlement to damages for wrongful commitment and alleging, *inter alia*, that he was not severely mentally disabled or a threat to himself or others, Appellant placed the state of his mental health at the time of his involuntary commitment directly at issue and thereby triggered his obligation to disclose his mental health treatment records concerning prior

---

[18] A similar allegation was repeated at paragraph 246 of the third amended complaint, as follows, "[Appellant] was not severely mentally disabled and/or a clear and present danger to himself and others, as required by the MHPA." Third Amended Complaint, 12/12/19, at ¶246.

suicide attempts and suicidal ideations.[19]  **_Octave_**, 103 A.3d at 1262. Specifically, based upon Appellant's allegations that he was "held against his will for several days" for no reason other than as a result of the defendant-parties' violation of this constitutional and due process rights, as well as their gross negligence and legal and medical malpractice, it was reasonably foreseeable that the defendant-parties would challenge these allegations by seeking to demonstrate that Appellant's involuntary commitments under Section 7302 and Section 7303 were justified because Appellant was severely mentally disabled and in need of immediate and continued mental health treatment pursuant to the MPHA.[20]  In other words, by asserting claims of medical malpractice and legal malpractice, and by claiming he was not mentally disabled and did not pose a danger to himself or others, Appellant placed at issue his mental health and substance abuse treatment history, at least insofar as those treatment records involve prior attempts at suicide, prior threats of suicide with actions taken in furtherance

---

[19] Because Appellant's involuntary commitment was not definitively determined to be unjustified in accord with the MPHA in the expungement action, the validity of the involuntary commitment reasonably remains a possible defense in the current cause of action.

[20] It is also reasonably foreseeable that the defendant-parties might also need Appellant's mental health and substance abuse treatment records to demonstrate that they cannot be held liable under Section 7114 because they did not engage in willful misconduct or gross negligence, even if certain procedural deficiencies occurred.

thereof, or prior treatment involving suicidal ideation. ***See*** 50 P.S. § 7301(b)(2)(ii).

As such, we concur with the trial court that Appellant impliedly waived the evidentiary privileges afforded by the MHPA and the DAA pursuant to ***Octave***, ***supra***, and its progeny, based on certain allegations and causes of action contained in his third amended complaint. We now examine the scope of that waiver to determine whether the trial court erred in ordering Appellant to produce his medical, mental health, and substance abuse treatment records as set forth in the March 10, 2020 orders.

To reiterate, when a confidentiality privilege has been impliedly waived, the purpose for which it has been waived is determinative of the scope of that waiver. ***In re Fortieth Statewide Investigating Grand Jury***, 220 A.3d at 568. In the case *sub judice*, Appellant impliedly waived the evidentiary privileges protecting his mental health and substance abuse treatment records for the purpose of determining the validity of Appellant's commitment under Section 7302 and Section 7303 of the MHPA. Therefore, we must examine whether the March 10, 2022 orders required disclosure of medical, mental health, and substance abuse treatment records which exceeded the scope of claims Appellant placed at issue in filing this action.

A determination of whether Appellant's involuntary commitment was justified, under Section 7302 and Section 7303, and, as such, could serve as a possible defense by the defendant-parties, would involve an analysis of the information that was known by Dr. Buzogany, at the time he approved the

Section 7302 immediate involuntary commitment, or by the mental health review officer, at the time he or she certified the Section 7303 extended involuntary commitment. Therefore, the discovery of any documents or information pertaining to Appellant's prior mental health and substance abuse treatment that **specifically and directly** relate to prior attempts at suicide, threats of suicide with acts in furtherance thereof, or of suicidal ideation, is reasonably calculated to lead to admissible evidence that was known by Dr. Buzogany, at the time of the Section 7302 involuntary commitment, or by the mental health review officer, as presented at the Section 7303 hearing. As such, having concluded that Appellant impliedly waived the evidentiary privileges afforded by the MHPA and DAA by virtue of the allegations contained in his third amended complaint, we find the scope of that waiver pertains to any documents or information related to Appellant's prior mental health and substance abuse treatment that **specifically and directly** involved Appellant's prior attempts at suicide, prior threats of suicide coupled with acts in furtherance thereof, and prior instances involving suicidal ideation and may have been known, or relied on, by Dr. Buzogany or the mental health review officer in authorizing Appellant's involuntary commitments under Section 7302 and Section 7303.

In filing his third amended complaint, Appellant placed at issue his mental health status, particularly his suicidal ideations as of December 2016. For these reasons, we affirm the trial court's March 20, 2022 orders. Nevertheless, we are aware of the distinct possibility that many of the

documents subject to disclosure under the trial court's orders may fall outside the scope of the implied waiver of the confidentiality privileges afforded by the MHPA and DAA.  As stated *supra*, the implied waiver is strictly limited to those documents and information relating to Appellant's mental health and substance abuse treatment that **specifically and directly** involve treatment for prior instances of suicidal ideation, including prior attempted suicide or prior threats of suicide coupled with overt acts in furtherance thereof.  Moreover, while we do not find an abuse of discretion in permitting disclosure of records for the three or five years prior to December 19, 2016,[21] or the requirement that the records be submitted to the trial court for an in-camera review to determine whether such records should be disclosed, we find the trial court needed to put in place certain additional guidelines, as well as practices and procedures, concerning the use, retention, reproduction, and further disclosure of such records by the defendant-parties.  In other words, guidelines and practices and procedures should be established by the trial court that track the production of documents and information; restrict who has access to the disclosed information, *i.e.*, only the defendant-parties involved in the motions to compel and their counsel; how the challenged information may be used in future pleadings and procedures, including court

---

[21] In the case of Dr. Buzogany's motion to compel, the trial court limited the disclosure to the five years prior to December 19, 2016.  In the case of McKee's motion to compel, the trial court limited the disclosure to the 3 years prior to December 19, 2016.

filings and depositions in the case *sub judice*, *i.e.*, should the parties be required to petition the trial court to place certain portions of the record under seal; and what consequences or sanctions should be in place if a defendant-party fails to maintain the confidentiality of such records. We leave these decisions to the trial court in the first instance.

Consequently, for the reasons set forth herein, we affirm the March 10, 2022 orders (Trial Court Order (Buzogany) and Trial Court Order (McKee)). We remand this case with the instruction that the trial court supplement these orders with orders that set forth specific guidelines and practices and procedures to safe-guard the disclosed information in accordance with this memorandum.

March 10, 2022 Order (Trial Court Order (Buzogany)) affirmed. March 10, 2022 Order (Trial Court Order (McKee)) affirmed. Case remanded with instructions to supplement the March 10, 2022 orders. Appellant's Motion to Strike Supplemental Reproduced Record granted. Jurisdiction relinquished.

President Judge Emeritus Bender joins.

Judge Kunselman files a Dissenting Memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/21/2023